James ROBINSON, JR. *v.* STATE of Arkansas

CR 93-1409                                    879 S.W.2d 419

Supreme Court of Arkansas
Opinion delivered July 11, 1994

513

*Jack W. Barker*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Senior Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. The appellant, James Robinson, Jr., was sentenced to terms of life imprisonment, fifty years, and twelve years, and received fines totaling $50,000, following his conviction on charges of delivery of a controlled substance, conspiracy to deliver a controlled substance, and operating a drug premises. On appeal, he raises two points for reversal, arguing that the trial court erred in allowing the State to introduce into evidence three facsimile chemical analysis reports from the Arkansas State Crime Laboratory on the grounds (1) that the faxed documents had not been provided to defense counsel through appropriate and timely discovery, and (2) that the faxed documents constitute inadmissible hearsay. Neither contention has merit, and we affirm the judgment of the trial court.

*Facts*

On September 15, 1992, the Narcotics Division of the El Dorado Police Department was engaged in an undercover operation that focused on appellant Robinson, who was known by his street name, "Grove." After collecting information on the subject and conducting visual surveillance of his residence, the police employed confidential informants to make controlled purchases of crack cocaine from Robinson. When field tests of the drugs yielded positive results, the police obtained a search warrant, entered the house, and arrested Robinson and three other individuals, one of whom was found to have hidden a quantity of crack cocaine on his person.

Robinson was charged with delivery of a controlled substance, conspiracy to deliver a controlled substance, operating a drug premises, and being a habitual offender (having been convicted of three prior felonies). A jury trial was held on July 7, 1993, and Robinson was sentenced to life imprisonment and fined $25,000 for delivery of a controlled substance; sentenced to fifty years and fined $15,000 for conspiracy to deliver a controlled substance; and sentenced to twelve years and fined $10,000 for operating premises.

In two separate arguments, Robinson contends that the trial court erred in admitting into evidence facsimile copies of analysis reports prepared by the State Crime Laboratory detailing the results of the tests performed on the two "rocks" of crack cocaine

purchased by the confidential informants. These exhibits established that the substances in question were rock material consisting of cocaine base and benzocaine.

## I. Admission of facsimile documents

Although, as presented, this appeal features two points for reversal, the pair of arguments are related and overlapping. Rather than consider them separately, we will treat the two as part of a single issue — whether the trial court erred in admitting into evidence the facsimile documents.

### a. Discovery violation

During the trial of this case but before the State's formal introduction of the facsimile copies of the reports, a meeting was held in chambers at which defense counsel objected to the admission of the faxed reports on the basis of a violation of the rules governing discovery. She contended that the copies of the reports that had been made available to the defense through the prosecuting attorney's open-file policy had not been properly attested and that, because of this asserted discovery violation, she was unable to prepare adequately for trial.

Under Ark. R. Crim. P. 17.1(a)(iv) (1994), the prosecuting attorney must, "upon timely request," disclose to defense counsel "any reports or statements of experts, made in connection with the particular case, including results of physical or mental examinations, scientific tests, experiments or comparisons. . . ." Rule 17.3(a) provides:

> The prosecuting attorney shall use diligent, good faith efforts to obtain material in the possession of other governmental personnel which would be discoverable if in the possession or control of the prosecuting attorney, upon timely request and designation of material or information by defense counsel.

The Union County Prosecuting Attorney's Office maintained an open-file discovery policy in lieu of formal compliance with discovery rules.

Prior to trial, defense counsel examined the prosecutor's file on the present case and found the three unattested crime lab

reports relating to the crack cocaine purchased or seized at Robinson's residence. During the meeting at which defense counsel objected to the introduction of the faxed copies of the reports, the deputy prosecutor explained that amended reports bearing the required attestation clauses had been entrusted to the police for safekeeping until the trial date but that the documents had disappeared. Consequently, according to the State, efforts were then underway to obtain faxed copies of the two reports on the substances purchased from Robinson. (A third faxed copy, pertaining to the rocks of crack cocaine seized from another party at Robinson's residence, was already in the prosecutor's file.)

■ Responding to defense counsel's objection, the trial court ruled that the three facsimile reports would be admissible, making the following remarks:

> I'll just state this for the record for purposes of whoever reviews this if they do at some point, that I think that the State has not complied with the defendant's discovery. The State is chargeable with the knowledge of law enforcement and to me there is no distinction between the police file and the prosecutor's file. You're responsible for everything in both of them. And I think it was the duty of the State to have in its file the exact documents[.] [I]f you're going to use an open file policy, it's incumbent on the State to have the exact documents that you intend to submit.
>
> . . .
>
> And I think it is a violation and a non-compliance with discovery to then come in at trial and you come up with documents that have things added, which these do. So I think that's clear, and I think we've got a discovery issue.
>
> I'm comfortable with the admissibility of the facsimile copies or photostatic copies. None of these things disturb me. It's the discovery issue. But the rule on discovery does not simply say that if there is a problem with discovery then the item has to be excluded . . . or that the witness will be excluded. I mean, this Court all the time is presented with situations where you have last-minute witnesses and the Court has to determine whether there is any prejudice

presented by it. And here, I think, what the consensus is, and what I've heard everybody say, is there's no prejudice because nobody would have done anything differently.

And when you get down to the protection of the substantial rights of the defendant, they are protected here by virtue of the attestation provision. We've got a discovery problem, and I am chastising the State, for lack of a better term for that, but I don't feel that the way to deal with it is to exclude it. And so I'm going to allow them to be entered.

We agree with the trial court's observations and comments. Obviously, the State violated the rules of discovery. If a prosecutor's office intends to fulfill its discovery obligations by relying upon an open-file policy, it must make every practicable effort to ensure that the information and records contained in the file are complete and that the documents employed at trial are identical to the material available to the defense in the open file.

We also agree with the trial court that, despite the discovery violation, Robinson failed to demonstrate how he was prejudiced. In fact, the trial court's balanced disquisition was perfectly in accord with the holdings of this court that, in order to obtain a reversal of a criminal conviction on the basis of a discovery violation, the appellant must make a showing of prejudice. *Prince* v. *State*, 304 Ark. 692, 805 S.W.2d 46 (1991); *Moore* v. *State*, 303 Ark. 514, 798 S.W.2d 87 (1990).

Here, Robinson's attorney had access to reports that, substantively, were identical to the facsimiles later introduced at trial. More important, though, counsel for the defense indicated to the State that she had no desire to cross-examine the chemist who conducted the drug analysis. She admitted at the hearing that she had no desire to call Mr. Buck to the witness stand, asking rhetorically, "Now why would I want the Crime Lab to come down and testify that that's cocaine when I know she [the deputy prosecutor] can't get the reports in the way they are? . . . And why should I make a request because I don't want the lab person to come." Finally, when questioned by the trial court about the prejudice to her client and the "difference" the introduction of the facsimiles would make to his case, Robinson's attorney replied,

"Probably no difference as to the ultimate outcome. . . . I don't think it would have been any different. It's not going to be any different whether the chemist says it was cocaine or whether the report says it was cocaine. I mean, in reality, I suppose, it's better for a chemist to say it than just a little report to say it, you know."

In other words, defense counsel plainly waived her objection to the discovery violation and conceded that no prejudice resulted from the State's failure to comply with its dicovery obligation under the rules of criminal procedure. The trial court, therefore, did not err in this regard.

### b. Hearsay objection

At the in-chambers hearing, counsel for Robinson also objected to the admission of the faxed, properly attested drug analysis reports on the basis that the Arkansas Rules of Evidence do not provide a hearsay exception for facsimile copies. Two separate Arkansas statutes permit the admission of duly attested drug analysis reports. One, Ark. Code Ann. § 5-64-707 (Repl. 1993), deals with reports issued by the Arkansas Department of Health. The other, Ark. Code Ann. § 12-12-313 (Supp. 1993), which is relevant to the present case, concerns State Crime Laboratory reports in general. Subsection (a) provides:

> The records and reports of autopsies, evidence analysis, drug analysis, and any investigations made by the State Crime Laboratory under the authority of this subchapter shall be received as competent evidence as to the matters contained therein in the courts of this state subject to the applicable rules of criminal procedure when duly attested to by the executive director or his assistants, associates, or deputies.

Subsection (d) provides:

> (1) All records and reports of evidence analysis of the State Crime Laboratory shall be received as competent evidence as to the facts in any court or other proceeding when duly attested to by the employee who performed the analysis.
>
> (2) The defendant shall give at least ten (10) days

notice prior to the proceedings that he requests the presence of the employee of the State Crime Laboratory who performed the analysis for the purposes of cross-examination.

(3) Nothing in this subsection shall be construed to abrogate the defendant's right to cross-examination.

When a chemical analysis report contains an attestation by the chemist who purports to have performed the test, certifying that he or she personally performed the laboratory test and prepared the laboratory analysis report, the statement satisfies the statutory requirement of § 12-12-313. *See Willis* v. *State*, 309 Ark. 328, 829 S.W.2d 417 (1992). Otherwise, such a report is considered inadmissible hearsay under Ark. R. Evid. 803(8)(iii). *Nard* v. *State*, 304 Ark. 159, 801 S.W.2d 634 (1990).

■ Although the State Crime Lab's drug analysis reports that were included in the prosecutor's file for inspection purposes did not contain attestation clauses, the oversight was corrected on the date of the trial by Jerry C. Buck, the chemist who performed the tests. Mr. Buck attested to the truth and accuracy of each of the three reports and faxed the amended documents to the prosecuting attorney in Union County.

■ As the trial court accurately indicated, Ark. R. Evid. 1003 (1994) provides for the admissibility of duplicates. The rule states that:

A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity or continuing effectiveness of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original.

It is significant that Robinson neither questioned the authenticity or continuing effectiveness of the original drug analysis reports nor challenged the deputy prosecutor's explanation that "the only difference between these reports [the originals and the facsimiles] is the [added] attestation by the expert."

■ It is Robinson's contention that the admission of the facsimile documents denied him his right to confront and cross-examine his accusers — a right expressly acknowledged in Ark.

Code Ann. § 12-12-313(d)(3), quoted above. He points to § 12-12-313(d)(2), where a ten-day notice requirement is set forth for a defendant wishing to cross-examine the Crime Lab employee who performed the analysis in question. In *Johnson* v. *State*, 303 Ark. 12, 792 S.W.2d 863 (1990), this court held that failure to comply with the notice provision of subsection (d)(2) constitutes waiver of the confrontation right. Robinson has cited the holding of the Arkansas Court of Appeals that a defendant's failure to give such notice will not be deemed a waiver of his right to cross-examine the Crime Lab employee if he neither knew nor should have known that the State intended to introduce the Crime Lab report. *Hendrix* v. *State*, 40 Ark. App. 52, 842 S.W.2d 443 (1992). Although we do not take issue with the appellate court's holding, the case has no application to the present circumstances.

Robinson maintains that, because he was not aware that the State intended to introduce an amended report with proper attestation, he was unable to comply with the statutory notice provision. This assertion is rather disingenuous, to say the least. As mentioned above, counsel for the defense explicitly declared her desire not to cross-examine the chemist. Further, as noted earlier, the only difference between the original reports and the facsimiles was the addition of attestation clauses by the chemist who had performed the drug analysis. Robinson obviously knew that the State intended to introduce the defective originals, which contained precisely the same analysis results as the subsequently submitted corrected copies, and was evidently gambling on the State's continuing failure to correct the oversight.

■ . Thus, the absence of proper attestation notwithstanding, Robinson had actual notice of the test results and was allowed his opportunity to challenge the authenticity of the documents to pass. Having trusted to chance, he cannot now claim surprise. Moreover, Robinson has failed to show how it was unfairly prejudicial to admit the faxed copies in place of the originals when he had no intention of cross-examining the Crime Lab chemist anyway.

The trial court did not err in finding that the facsimile documents were admissible under the rules of evidence.

## II. Rule 4-3(h) review

In compliance with Rule 4-3(h) of the Rules of the Supreme Court and Court of Appeals of the State of Arkansas, the State has searched the record for objections decided adversely to Richardson not abstracted by the appellant and has supplemented the abstract. No abstracted ruling involves prejudicial error.

Affirmed.