Brian Glenn FINDLEY *v.* STATE of Arkansas

CA CR 98-537                                          984 S.W.2d 454

Court of Appeals of Arkansas
Divisions III and IV
Opinion delivered December 23, 1998

*Everett & Mars*, by: *John C. Everett* and *Jason H. Wales*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Mac Golden*, Asst. Att'y Gen., for appellee.

JOHN E. JENNINGS, Judge. Brian Glenn Findley was found guilty by a Washington County jury of theft of property and was sentenced by the court to ten years' imprisonment. Findley argues on appeal that the trial judge abused his discretion in admitting into evidence certain exhibits and in denying his motion for a continuance when the exhibits were offered. These arguments are based on the appellant's contention that the State did not fulfill its discovery obligations with respect to the exhibits. We find no error and affirm.

The basis of the State's charge of theft was the contention that appellant had over a period of time voided a number of sale receipts of his employer, Pearle Vision Center, and retained the corresponding money for his personal use. To establish its case, the State introduced into evidence a series of exhibits showing individual transactions.

When the State offered exhibit two the defendant objected:

DEFENSE COUNSEL: Objection on the grounds that I have asked numerous times, through discovery, for the transactions that the State intends to rely on and have been given stacks of transactions, none of which contain any type of work on a customer whose name is Brenda Canfield.

THE COURT: Mr. Rhoades [the prosecutor], has the material that the witness is referring to been provided to the defendant?

PROSECUTOR: Yes, your Honor. The State has talked to Mr. and Mrs. Rogers on numerous occasions and has gotten together all these documents and put them in the State's file before the previous trial date. Although I cannot guarantee that I made copies of these documents and provided them to the defendant, I do know for a fact that the information has been in the State's file in this exact order.

THE COURT: Have you denied access to the defendant?

THE PROSECUTOR: No, sir.

THE COURT: All right, the objection is overruled.

DEFENSE COUNSEL: Just for the record, I have on several occasions been to the Prosecutor's office and made copies of documents in his file. These documents that the State is offering into evidence were not in the file, or I would have copied them. I want to clearly state that on the occasions I copied the State's file, the documents at issue were not to be found therein. The defense simply requests an opportunity to look at and review the proposed evidence.

THE COURT: Ms. Britt, as you know the State maintains an open file policy. The State assures me that this material has been in its file for a considerable period of time. You have been given access to that file. If you want an opportunity for your client to review this information for the next 30 seconds or minute to confirm that it is the documents that the witness has identified, I'll give you the opportunity to look at it, but this information has been available to you for a long, long time.

PROSECUTOR: I would like to repeat the fact that the documents comprising State's Exhibits 2-8 have not only been in the State's file, but they have been in the exact order that the State is presenting them now since the last meeting I had with Mr. and Mrs. Rogers several weeks ago. I do not remember when this

case was initially set for trial, but I would say that the information at issue has been in my file for at least a month, although I cannot guarantee the exact amount of time.

THE COURT: We are going to break for ten minutes. That will give the defendant an opportunity to look at each one of the proposed Exhibits. Then we will come back and move forward with the trial.

DEFENSE COUNSEL: Your Honor, although I recognize the State has an open file policy, it is obvious that I have been to copy the State's file due to the large stack of papers that I have here, and I have been to copy this file on several occasions, but obviously do not have the new material that was brought in today. I don't think the Court can expect us to check the file on a daily basis to make sure anything new has been put in after we have made several trips to copy the file and get the documents responsive to my discovery request. I believe it is up to the State to provide any new information to us or at least tell us that it is in their file. My client and I have painstakingly gone through a list of transactions that was provided to us containing some 21 or 22 items on it. We have looked at each one of those and formulated a defense to each one of the transactions. None of this new paperwork that the State is proposing to submit into evidence was on the list of transactions to which we have prepared a defense, which I thought was the State's master list of transactions. Thirty minutes or ten minutes is not enough time to review seven new transactions that we have never seen before and at this time I would ask the Court to continue this case and give us time to prepare our defense.

PROSECUTOR: This case was originally scheduled for trial on November 26, 1997, and was continued until December 23, 1997. The case was continued from December 23, 1997, until today, February 24, 1998. In preparing for trial in December, I met with Mr. and Mrs. Rogers in my office where we examined and prepared several packages of documentation concerning this case. It is my belief that I either copied these packages or told the defendant's attorney that I had them in my possession and that she could copy them at her convenience. At any rate, the documents comprising these Exhibits at issue have been in the State's file since prior to the December trial date and have been in the exact order in which I propose to introduce them today. The State's position is that these documents have been in its file for at

least a month, probably two months. Considering the State's open file policy, there is absolutely no cause for a continuance.

DEFENSE COUNSEL: I disagree with the Prosecutor. I specifically remember coming back from my maternity leave and meeting with my client. At that time, I sent an investigator up to copy the State's file, and he brought back what he described to me as being all of the transactions that the State had in its file. Your Honor, I have made every effort to copy the State's file. If these items had been in the State's file I would have copied them.

THE COURT: What are these documents that we're talking about today?

PROSECUTOR: The documents at issue create a paper trail and involve several different types of documents. Each packet consists of time cards, daily business reports, which are business records showing what the deposits and transactions were for specific business days. The packages also consist of void records showing where void transactions were done. The packages also contain dispensing records showing where products were dispensed.

THE COURT: To try to answer my question then, I assume these are business records maintained by Mr. and Mrs. Rogers in the ordinary course of their business?

PROSECUTOR: Yes, sir.

THE COURT: Are these business records in the State's file similar at least in terms of form to all the other records and documents that relate to this business?

PROSECUTOR: Yes. The only difference is that these documents are the originals of the Xerox copies which have been in our file for some period of time.

THE COURT: Since at least December the 23rd?

PROSECUTOR: Since the last trial setting, and I believe that was December the 23rd.

■ The trial court then admitted the exhibits. Rule 17.2 of the Rules of Criminal Procedure provides that the prosecuting attorney may perform his discovery obligations in any manner mutually agreeable to himself and defense counsel or by notifying defense counsel that material and information, described in gen-

eral terms, may be inspected, obtained, tested, copied, recorded or photographed during specified reasonable times. Ark. R. Crim. P. 17.2(b)(i). The trial court has broad discretion in matters pertaining to discovery, and that discretion will not be second-guessed by the appellate court absent an abuse of discretion. *Banks v. Jackson*, 312 Ark. 232, 848 S.W.2d 408 (1993); *MacKintrush v. State*, 60 Ark. App. 42, 959 S.W.2d 404 (1997).

█    Appellant correctly notes that the "open-file policy" of the State has been subject to some judicial criticism. In *Earl v. State*, 272 Ark. 5, 612 S.W.2d 98 (1981), the court said:

> The 'open-file policy' of the Pulaski County Prosecuting Attorney's Office may be a time saver for both the State and the defense; however, as here, it often results in the court being unable to determine whether discovery has been complied with under the Arkansas Rules of Criminal Procedure.

In *Bussard v. State*, 295 Ark. 72, 747 S.W.2d 71 (1988), the supreme court said that it had not given "carte blanche approval" to the open-file policy as an acceptable substitute for disclosure. In *Robinson v. State*, 317 Ark. 512, 879 S.W.2d 419 (1994), the court said:

> If a prosecutor's office intends to fulfill its discovery obligations by relying upon an open-file policy, it must make every practical effort to ensure that the information and records contained in the file are complete and that the documents employed at trial are identical to the material available to the defense in the open file.

Finally, in *Dever v. State*, 14 Ark. App. 107, 685 S.W.2d 518 (1985), we reversed for a discovery violation on the State's part where critical evidence was located not in the prosecutor's file but rather in a file at the sheriff's office. We said, "We do not read *Robinson* to hold that simply because the prosecution has an open file policy it has fulfilled its discovery obligation and defense counsel is then required to himself examine all other files in the county maintained by law enforcement officials."

Nevertheless, seventeen years have passed since *Earl v. State* was decided, and the supreme court, although it has had a number of opportunities to do so, has not prohibited the use of an open-file policy as a means of compliance with the State's discovery

obligations. The case at bar is unlike *Dever* — there is no suggestion that defense counsel was required to search files other than the prosecutor's.

The crux of appellant's argument is that because statements of his lawyer and those of the prosecutor were in such conflict, it was an abuse of discretion for the court to admit the exhibits without granting a continuance. We do not view the statements of counsel as necessarily being in conflict. Although the prosecutor's statements were not entirely without ambiguity, we think that the trial judge could fairly find that the exhibits sought to be introduced had been in the prosecutor's file for at least sixty days prior to trial. Defense counsel did not tell the court when she last examined the State's file, other than to say that it was after she came back from maternity leave. We have no way of telling when this was, nor do we have any reason to think the trial judge should have known the date to which counsel was referring.

■ Given the trial court's broad discretion in deciding such matters, we simply cannot say that the court abused its discretion in failing to find a discovery violation. There is not the slightest indication that defense counsel was unaware that the State relied on an open-file policy, and there was no assurance given to the trial judge that defense counsel had checked the State's file within the last sixty days prior to trial.

For the reasons stated, the decision of the circuit court is affirmed.

PITTMAN, ROGERS, and STROUD, JJ., agree.

BIRD and ROAF, JJ., dissent.

S AM BIRD, Judge, dissenting. I respectfully disagree with the majority because I do not believe that the State has complied with its obligation to provide discovery as required by the Rules of Criminal Procedure. I also believe that the trial court erred when it denied appellant's motion for a continuance so that he would have an opportunity to examine the State's recently acquired exhibits. I would, therefore, reverse and remand this case for a new trial.

Arkansas Rule of Criminal Procedure 17.1 provides, in pertinent part, as follows:

> (a) . . . [T]he prosecuting attorney shall disclose to defense counsel, upon timely request, the following material and information which is or may come within the possession, control, or knowledge of the prosecuting attorney:
>
> . . . .
>
> (v) any books, papers, documents, photographs or tangible objects which the prosecuting attorney intends to use in any hearing or at trial. . . .

The record of this case reflects that, in preparation for trial, appellant's attorney filed a written request for discovery pursuant to Rule 17.1 in which she specifically requested

> all information or material that is or may come within the possession, control, or knowledge of the prosecutor including copies of Pearle Vision time cards and/or time records in the name of Brian G. Findley, showing the dates and times he worked, and copies of all Pearle Vision audit records which would show the dates and times that Brian G. Findley's password was used to void transactions in the store.

Appellant's discovery request also included a provision, pursuant to Rule 19.2, that the discovery request "be treated as continuing in nature as it relates to all information received by the State up until the day of trial."

The record does not reflect that the State filed a response to appellant's discovery motion, although it is apparent from the record that the State did afford defense counsel access to its file, including the opportunity to make and retain copies of any evidence contained therein.

The trial, which was originally set for November 26, 1997, was first continued until December 23, 1997, and was continued again and eventually begun on February 24, 1998. During the trial, the State offered into evidence State's Exhibits numbers Two through Eight, consisting of various documents generated by appellant's former employer, Pearle Vision, that the prosecutor sought to use to establish a connection between the missing

money and a password that had been provided to appellant to gain access to Pearle Vision's computer. There was no dispute but that these documents met the criteria of those described in defense counsel's discovery request.

When defense counsel objected to the introduction of the exhibits because of the prosecutor's failure to provide them prior to trial, the prosecutor initially responded that the exhibits had been in the State's file since before the previous trial date, but later modified his statement to say that the documents had been in the State's file "since the last meeting I had with Mr. and Mrs. Rogers *several weeks ago*. I do not remember when this case was initially set for trial, but I would say that this information has been in my file *for at least a month*, although I cannot guarantee the exact amount of time." (Emphasis added.)

Defense counsel responded that she was aware of the State's open-file policy and that she had availed herself of it by making copies of the material in the State's file on several occasions, but that the materials contained in Exhibits Two through Eight had not been in the State's file. The prosecuting attorney then offered a third time frame within which the disputed exhibits might have been placed in the State's file, stating that it was the State's position "that these documents have been in its file for at least a month, probably two months." The prosecutor went on to say that because of the State's open-file policy, there was no reason for the court to grant a continuance.

The majority generously characterizes the prosecutor's statements about when the disputed exhibits were placed in the State's file as "not entirely without ambiguity" and suggests that the trial court "could fairly find that the exhibits sought to be introduced had been in the prosecutor's file for at least sixty days prior to trial." I disagree. In my view, it is more accurate to say that the prosecutor's equivocal statements make it clear that he had no idea when the exhibits were put in the file, and that it was the State's position that its open-file policy cast the burden on appellant to discover whatever was put in the file, whenever it was put there, and that *when* the exhibits were put in the file was immaterial so long as they were put there before the trial. It is equally clear from

the statements of the trial judge that he agreed with the State's position that by maintaining an open-file policy, the State had met its obligation to provide discovery.

I do not interpret Rule 17.1 to mean that the State can fulfill its discovery obligations in a criminal case by filing no response whatsoever to a defendant's motion for discovery, and thereafter relying on a so-called "open-file policy" as fully satisfying all requests for discovery. It is true, as the majority points out, that Rule 17.2(b)(i) provides that the prosecuting attorney may perform his discovery obligation in any manner mutually agreeable to himself and defense counsel or by notifying defense counsel that material and information, described in general terms, may be inspected, obtained, tested, copied, recorded, or photographed during specified reasonable times. However, there was no assertion by the prosecutor in this case that he had made an agreement with defense counsel as to how the State's discovery obligation would be performed, or that the prosecutor had notified defense counsel of specified reasonable times that the State's file could be inspected. Even if it could be said that the State's long-standing practice of maintaining an open file could be deemed to be an implied agreement that its files were open for inspection at all reasonable times, it should also be implied that the materials expressly sought to be discovered by the defendant will be in the State's file when defense counsel chooses to inspect it.

As defense counsel argued, if the State is permitted to rely on an open-file policy as satisfying its discovery obligations, a defendant should not be required to inspect the State's file on a daily basis to see if anything new has been added. This is particularly true where, as here, the defendant's discovery motion reminded the State that Ark. R. Crim. P. 19.2 imposes upon it a duty of continuing discovery, even after its initial compliance with the rules. Rule 19.2 expressly requires parties to promptly notify opposing counsel of the existence of "additional material or information comprehended by a previous request to disclose." There is nothing in Rule 19.2 to indicate that this continuing duty to provide discovery can be fulfilled by the State's reliance on an unwritten, but apparently long-standing, policy of maintaining an open file. To the contrary, Rule 19.2 expressly requires that a party becom-

ing aware of additional material or information "shall promptly notify opposing counsel."

The majority says that it does not view the statements of defense counsel and the prosecuting attorney (quoted at length in the majority opinion) as being in conflict because defense counsel only informed the court that she last inspected the file after she returned from maternity leave, but failed to say when that was. I suggest that knowledge of the specific date upon which defense counsel returned from maternity leave is unnecessary to fairly and logically discern from the record that defense counsel's last examination of the State's file occurred less than thirty days before trial. Specifically, when the prosecuting attorney stated to the court that "the State's position is that these documents have been in its file for at least a month, probably two months," defense counsel responded,

> I disagree with the prosecutor. I specifically remember coming back from my maternity leave and meeting with my client. At that time, I sent an investigator up to copy the State's file and he brought back what he described to me as being all the transactions that the State had in its file.

The only logical meaning that can be attributed to defense counsel's disagreement with the prosecutor's statement is that she returned from maternity leave within the month preceding trial, copied the State's file, and the disputed exhibits were not there.

Although the State's so-called "open-file policy" has never been expressly invalidated, it has been, as the majority points out, the subject of judicial criticism, *Robinson v. State*, 317 Ark. 512, 879 S.W.2d 419 (1994), *Bussard v. State*, 295 Ark. 72, 747 S.W.2d 71 (1988), and *Earl v. State*, 272 Ark. 5, 612 S.W.2d 98 (1981), and its improper use has resulted in the reversal of at least one case, *Dever v. State*, 14 Ark. App. 107, 685 S.W.2d 518 (1985). In *Bussard*,[1] *supra*, the supreme court stated:

> [W]e have not given carte blanche approval of an open file policy as an acceptable substitute for disclosure. Merely because the

---

[1] *Bussard* was reversed on other grounds, making it unnecessary for the court to consider whether the State's discovery violation also warranted reversal.

prosecutor declares that the files in the case are open, it cannot be taken to mean that he has fulfilled his discovery obligations.

295 Ark. at 80, 747 S.W.2d at 75 (citing *Earl v. State, supra*).

In *Robinson*,[2] *supra*, where the prosecutor had in its file that had been examined by defense counsel three unattested crime-lab reports, but sought at trial to substitute attested facsimile copies of those same reports for introduction into evidence, the supreme court stated:

> Obviously, the State violated the rules of discovery. If a prosecutor's office intends to fulfill its discovery obligations by relying upon an open-file policy, it must make every practicable effort to ensure that the information and records contained in the file are complete and that the documents employed at trial are identical to the material available to the defense in the open file.

317 Ark. at 517, 879 S.W.2d at 421-22.

The majority states that "seventeen years have passed since *Earl v. State* was decided and, the supreme court, although it has had a number of times to do so, has not prohibited the use of an open-file policy as a means of compliance with State's discovery obligations." I find this statement astonishing in view of the clear caveat set forth in *Bussard* and *Robinson, supra,* (not to mention this court's *Dever, supra*) to the effect that the State's reliance on an open-file policy does not fulfill its discovery obligations. I simply do not know how the supreme court could have made it any more clear.

I see no distinction between the State's discovery violations criticized in *Bussard, Robinson,* and *Dever,* and the violation that has occurred in the case at bar. Furthermore, appellant has clearly demonstrated that he was prejudiced by the State's noncompliance with the discovery rules by establishing that the six disputed exhibits related to alleged thefts of money totaling an amount that would have made a difference between whether appellant could be found guilty of a Class B felony with an exposure to ten years

---

2 *Robinson* was affirmed in spite of the discovery violation because appellant's counsel was held to have waived the violation and conceded that no prejudice had resulted to appellant as a result of the State's failure to comply with its discovery obligations.

imprisonment, or the less serious offense of a Class A misdemeanor with an exposure to only one year imprisonment.

In my opinion, this case should be reversed and remanded for a new trial. I am authorized to report that Judge ROAF joins in this dissent.