Dennis James SMITH *v.* STATE of Arkansas

CR 01-1132

98 S.W.3d 433

Supreme Court of Arkansas
Opinion delivered February 20, 2003

*G.B. "Bing" Colvin, III*, public defender, for appellant.

*Mark Pryor*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellee.

JIM HANNAH, Justice. A Drew County jury convicted Dennis James Smith of three counts of kidnapping, four counts of rape, two counts of attempted capital murder, one count of first-degree battery, and one count of vehicular piracy. He received the maximum sentences on all counts, all to be served consecutively except for the battery conviction, for a total of seven life sentences plus eighty years in the Arkansas Department of Correction. On appeal, Smith raises six points for reversal. We hold that there is no merit to any issue except sufficiency of the evidence on the first-degree battery conviction. The trial court erred in denying the directed-verdict motion where the evidence failed to show that Smith caused serious physical injury as required by Ark. Code Ann. § 5-13-201(a)(1) (Repl. 1997) or physical injury by means of a firearm as required by Ark. Code Ann. § 5-13-201(a)(7) (Repl. 1997). We modify the sentence on first-degree battery from twenty years' imprisonment to six years' imprisonment, the maximum sentence for second-degree battery.

The events leading up to Smith's convictions began on June 22, 2000, when he robbed a grocery store located in Desha County at gunpoint and took the store's owner, George Barnes, hostage. Smith drove Barnes in his pickup to a crop-dusting airport near Tillar in Drew County. At the airport, they encountered Wes Lawson, and Smith forced both men to accompany him into the airport office. Judy Quandt, the wife of the crop-dusting pilot, Fred Quandt, was in the office. Smith told Judy to call her husband on the radio and tell him that if he did not come back to the airport, Smith would kill everybody in the office. Smith then ordered all three hostages to take off their clothes. He forced the two men into the bathroom but kept Judy with him. Judy testified that Smith told her to bring up something on her computer, and when she was unable to bring up what he wanted Smith hit her more than once in the head with the butt of a gun.

Upon receiving his wife's urgent call, Fred Quandt landed his plane at the airport. With the plane's engines still running, he rushed toward the office wearing a helmet and earplugs, and did

not heed or hear an order to "get naked," whereupon Smith shot him in the stomach. Although seriously injured, Fred was able to escape and eventually recovered. After shooting Fred, Smith ordered Lawson to stand in the front doorway and threatened to shoot him next. Lawson then opened the front door and started running away from the building. During his escape, he sustained a gunshot wound to his arm and side that was not fatal.

Thereafter, Smith took the two remaining hostages into the bathroom, where he raped Judy, forced her to engage in oral sex with him, and forced her to engage in oral sex with Barnes. Over the course of several hours, Smith ordered the hostages to call the FBI, and he spoke by phone with various people while law enforcement officers surrounded the building. Finally, Smith instructed the hostages to put on their clothing. Then, he released Barnes and, while holding Judy for the purpose of shielding himself, Smith exited the office and was arrested.

Initially, Smith was charged with aggravated robbery, three counts of kidnapping, two counts of attempted capital murder, and two counts of rape. Based on a court-ordered mental evaluation, Smith was found unfit to proceed and committed to the State Hospital on December 4, 2000. On May 8, 2001, the State Hospital declared Smith fit to proceed, and the State amended the information to include three counts of kidnapping, two counts of attempted capital murder, four counts of rape, and one count each of first degree battery, vehicular piracy, and aggravated robbery. The count for the aggravated robbery offense that occurred in Desha County was nolle prossed as a result of an objection to venue.[1] Smith was tried by a Drew County jury and found guilty of all other counts. He was sentenced to seven terms of life imprisonment for four counts of rape and three counts of kidnapping, thirty years for each of the two counts of attempted capital murder, twenty years for first-degree battery and twenty years for vehicular piracy, with all sentences to run consecutively, except the sentence on the first-degree battery conviction.

---

[1] The aggravated robbery charge was refiled in Desha County Circuit Court and is the subject of a separate appeal in case number 02-895. This conviction was affirmed in *Smith v. State*, 351 Ark. 468, 95 S.W.3d 801 (2003).

██ Smith filed a timely appeal and raises six points for reversal. Three of the points involve challenges to the sufficiency of the evidence and three pertain to alleged discovery violations and procedural error. For double jeopardy reasons, we first consider Smith's sufficiency-of-the-evidence arguments. *Atkinson v. State*, 347 Ark. 336, 345, 64 S.W.3d 259, 265 (2002).

██ A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Id.* The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* When a defendant challenges the sufficiency of the evidence convicting him, the evidence is viewed in the light most favorable to the State, and only evidence supporting the verdict will be considered. *Id.*

## I. Sufficiency of the Evidence — Class Y Felony Kidnapping Conviction

Smith's first point on appeal is that with respect to the kidnapping of Barnes and Judy, he was only guilty of a class B felony because he released those hostages alive and in a safe place. We do not reach the merits of this point because it is not preserved for appellate review. In his directed-verdict motions on the kidnapping charges, Smith failed to specify how the State's case was deficient as required by Ark. R. Crim. P. 33.1.

██ Rule 33.1 of the Arkansas Rules of Criminal Procedure provides that

> [a] motion for directed verdict or for dismissal based on insufficiency of the evidence must specify the respect in which the evidence is deficient. A motion merely stating that the evidence is insufficient does not preserve for appeal issues relating to a specific deficiency such as insufficient proof on the elements of the offense.

Ark. R. Crim. P. 33.1(c) (2002); *see, e.g., Bowen v. State*, 342 Ark. 581, 30 S.W.3d 86 (2000). As to the kidnapping charges, defense counsel merely asserted that the State did not make a prima facie

case. Such an assertion does not identify a specific deficiency; rather, it is nothing more than a statement that the evidence is insufficient. Smith's motions for directed verdict, stating only that the State did not make a prima facia case, but not specifying in what respect the State's case was deficient, were not specific enough to preserve the issue for appellate review. *See Spencer v. State*, 348 Ark. 230, 72 S.W.3d 461 (2002).

## II. Sufficiency of the Evidence — First-Degree Battery Conviction

As his second issue on appeal, Smith argues that he could only be guilty of second-degree battery and not first-degree battery. Smith caused injury to Judy by striking her with the butt of a pistol. When asked what she meant by stating Smith had hit her with the butt of the gun, Judy specifically testified that she was struck by the part of the pistol that Smith was holding in his hand. Based on this conduct, Smith was charged with first-degree battery.

The first-degree battery statute provides, in relevant part, as follows:

> (a) A person commits battery in the first degree if:
> (1) With the purpose of causing serious physical injury to another person, he causes serious physical injury to any person by means of a deadly weapon; or
>
> * * * *
>
> (7) With the purpose of causing physical injury to another person he causes physical injury to any person by means of a firearm.

Ark. Code Ann. § 5-13-201 (Repl. 1997). It is undisputed that Judy was injured when Smith struck her with the butt of the pistol, but the injury does not rise to the level of a serious physical injury as defined by Ark. Code Ann. § 5-1-102(19) (Supp. 2001). Judy testified that she required no stitches.[2]

---

[2] We note *Bangs v. State*, 338 Ark. 515, 998 S.W.2d 738 (1999), a case where a victim was struck in the head with a firearm in her bedroom, dragged outside by her foot, and put in a truck where she was then struck in the face several times causing her head to strike the back glass of the truck cab. The perpetrator then placed a shirt around the

The issue we are then faced with is whether striking a person with the butt of a pistol constitutes causing an injury to another person by means of a firearm under Ark. Code Ann. § 5-13-201(a)(7). This presents an issue of statutory construction.

■ We strictly construe criminal statutes and resolve any doubts in favor of the defendant. *Williams v. State*, 347 Ark. 728, 67 S.W.3d 548 (2002); *Sansevero v. State*, 345 Ark. 307, 45 S.W.3d 840 (2001); *Hagar v. State*, 341 Ark. 633, 19 S.W.3d 16 (2000). There is no better settled rule in criminal jurisprudence than that criminal statutes must be strictly construed and pursued. *Williams, supra.* The courts cannot, and should not, by construction or intendment, create offenses under statutes which are not in express terms created by the Legislature. *Williams*, 347 Ark. at 742. We are without authority to declare an act to come within the criminal laws of this state by implication. *Dowell v. State*, 283 Ark. 161, 671 S.W.2d 740 (1984). It would violate the accepted canons of interpretation to declare an act to come within the criminal laws of the State merely by implication. *Lewis v. State*, 220 Ark. 259, 247 S.W.2d 195 (1952), (citing *State v. Simmons*, 117 Ark. 159, 174 S.W. 238 ( 1915)). Nothing is taken as intended which is not clearly expressed. *Graham v. State*, 314 Ark. 152, 861 S.W.2d 299 (1993); *Hales v. State*, 299 Ark. 93, 771 S.W.2d 285 (1989).

■ ■ Recognizing we must strictly construe the statute, we next consider within that restriction the basic rule of statutory construction which is to give effect to the intent of the legislature. *Short v. State*, 349 Ark. 492, 79 S.W.3d 313 (2002). We construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language, and if the lan-

---

victim's head to stop the bleeding and later applied paper towels and a "toboggan" when the victim bled through the shirt. Her surgeon characterized her injuries as "serious physical injuries." *Bangs*, 338 Ark. at 521.

Thus, naturally, serious physical injury may be inflicted by using a firearm as a club, however, in *Bangs,* the prosecutor charged first-degree battery under Ark. Code Ann. §5-13-201(a)(3), which provides:

> (3) He causes serious physical injury to another person under circumstances manifesting extreme indifference to the value of human life. . .

In the present case, Smith was not charged under Ark. Code Ann. §5-13-201(a)(3), rather he was charged under Ark. Code Ann. §5-13-201(a)(7).

guage of the statute is plain and unambiguous, and conveys a clear and definite meaning, there is no occasion to resort to rules of statutory interpretation. *Id.* Additionally, in construing any statute, we place it beside other statutes relevant to the subject matter in question and ascribe meaning and effect to be derived from the whole. *Id.*

We first note that there is no issue of whether Judy was struck in the head with a firearm. Smith used the pistol to shoot Fred and Lawson. Therefore, there can be no dispute that Smith struck Judy on the head with a firearm. Thus, we need not consider the definition of a firearm. The issue is simply whether striking Judy over the head with a firearm constitutes "physical injury . . . by means of a firearm" as required by the first-degree battery statute.

■ If the words "by means of" in Ark. Code Ann. § 5-13-201(a)(7), are changed to, "With the purpose of causing physical injury to another person he causes physical injury to another person by . . . a firearm," the State's argument would be more understandable. There is no doubt that Smith caused physical injury by striking Judy with a firearm. However, the phrase "by means of" is in the statute and may not be ignored. This court construes a statute so that no word is left void, superfluous, or insignificant; and meaning and effect are given to every word in the statute if possible. *Turnbough v. Mammoth Springs Sch. Dist. No. 2*, 349 Ark. 341, 78 S.W.3d 89 (2002). To conclude that the conduct in this case constitutes first-degree battery under Ark. Code Ann. § 5-13-201(a)(7) requires that the court ignore the phrase "by means of." The phrase "by means of" must be considered because it alters the meaning of the statute.

■ Websters defines "by means of" as "through the agency or instrumentality of." *Webster's Third New International Dictionary*, 307 (1993). The term "by means of a firearm" is found in a number of different types of cases and is not restricted to cases involving a battery. The cases do not construe "by means of a firearm," directly or by implication, to mean any injury inflicted by a firearm. The cases all use the term "by means of a firearm" where the firearm has been used as a firearm, including shooting,

brandishing, or where a firearm is otherwise used to threaten that it will be used as a firearm.

For example, in *Rawls v. State*, 260 Ark. 430, 541 S.W.2d 298 (1976), Rawls was convicted and sentenced for second-degree murder committed by means of a firearm. Rawls shot R.C. Edwards fourteen times with a rifle. In addition, both *Taylor v. State*, 77 Ark. App. 144, 72 S.W.3d 882 (2002), and *Maxwell v. State*, 73 Ark. App. 45, 41 S.W.3d 402 (2001), include the term "by means of a firearm," and the injuries were injuries caused by bullets.

Cases from other states containing the term "by means of a firearm" do not differ. In *State v. Rivera*, 74 Conn. App. 129, 810 A.2d 824 (2002), the appellant shot someone in the abdomen. In *Sallahdin v. Gibson*, 275 F.3d 1211 (10th Cir. 2002), the victim was killed by shooting. In *People v. Cook*, 91 Cal. App. 4th 910, 111 Cal. Rptr. 2d 204 (2001), the California Court of Appeals stated, "Consequently, when murder is alleged to have been committed by means of a firearm, it cannot be so committed without also committing an assault with a firearm." *Cook*, 91 Cal. App. 4th at 920. In other words, "by means of a firearm" means use of a firearm as a firearm, not as a club. In *Bowers v. State*, 2 P.3d 1215 (Alaska 2000) the criminal defendant was convicted of assault by means of a firearm when he fired a rifle in the air.

The clear intent of Ark. Code Ann. § 5-13-201(a)(7) is to criminalize and treat as battery in the first-degree any physical injury caused by use of a firearm as a firearm because of the inherent potentially deadly character of the discharge of a firearm. It is not intended to include an injury such as clubbing. That is covered by Ark. Code Ann. § 5-13-201(a)(1) (Repl. 1997) where there is serious physical injury, or by Ark. Code Ann. §5-13-202(a)(1) where there is physical injury, as in this case.

It is not the mere presence of the firearm or its use as a club that elevates the crime to first-degree battery. Under Ark. Code Ann. § 16-90-120 (1987), a person convicted of a felony where he or she employed a firearm as a means of committing or escaping from the felony may be subjected to an additional period of confinement. This statute is not at issue in this case.

■ The plain and ordinary meaning of "by means of a firearm" is that the firearm be used as a firearm. To conclude otherwise is to ignore the rules of statutory construction.

■ ■ When the proof offered supports a conviction on a lesser included offense but not the offense the accused was convicted of, we may reduce the punishment to the maximum for the lesser included offense, or reduce it to the minimum for the lesser offense or something in between, depending on the circumstances. *Bishop v. State*, 294 Ark. 303, 742 S.W.2d 911 (1988); *Dixon v. State*, 260 Ark. 857, 545 S.W.2d 606 (1977). In this case we find that it is appropriate to reduce the sentence from twenty years imprisonment, the maximum for first-degree battery, to six years, the maximum sentence for second degree battery. The trial court ordered the original sentence on first degree battery to run concurrently. The modified sentence will also run concurrently.

### III. Sufficiency of the Evidence — Vehicular Piracy Conviction

Smith's third point on appeal is that the State failed to meet its burden of proving the elements of vehicular piracy because he never gained control of the aircraft. The circuit court found that Fred's actions in returning to the airport and landing the plane were not voluntary, but were the result of compulsion.

■ "A person commits vehicular piracy if, without lawful authority, he seizes or exercises control, by force or threat of violence, over [a]ny aircraft occupied by an unconsenting person . . . ." Ark. Code Ann. § 5-11-105(a)(1) (Repl. 1997). The statute does not require that the threat of violence be directed toward Fred. It only requires that the threat be sufficient to exercise control over the aircraft such that a person becomes an unconsenting occupant of the aircraft.[3]

■ In this case, it is undisputed that Smith was threatening to kill everyone at the airport office if Fred refused to return to

---

[3] This is analogous to the proof required in cases of rape by forcible compulsion. Ark. Code Ann. § 5-14-103(a)(1)(A) (Supp. 2001). *See Jones v. State*, 348 Ark. 619, 74 S.W.3d 663 (2002) (finding substantial evidence where the perpetrator threatened the victim's children and roommate).

the airport and land the plane. Thus, because Smith exercised control over the aircraft through a threat of violence to the Fred's wife and others, Fred became an unconsenting occupant of the plane. Therefore, the circuit court did not err in denying Smith's motion for a directed verdict on this count.

As to the other points raised on appeal, Smith asserts his convictions should be reversed because of two discovery violations and the sentencing phase of his trial should be reversed because of a procedural error. Specifically, he contends that (1) the circuit court erred in denying his motion for a continuance based on the voluminous discovery presented within ten days of trial; (2) the circuit court erred in allowing the State to present witnesses without providing him with a witness list; and (3) the circuit court erred in not allowing him to argue during the sentencing phase that the sentences would run consecutively rather than concurrently.

### IV. Continuance for Investigation of a Phone-Call List

While Smith frames this argument as an error based on the denial of a continuance requested in response to "voluminous discovery within ten days of trial," his only argument concerns a list of people identified in confidential telephone bills. He contends that the circuit court's ruling prejudiced his ability to contact the people on the list for evidence of paranoia to support his mental-defect defense. The trial court denied a continuance, noting that Smith had the list for six days prior to trial and that he had not brought any specific item to the court's attention that would justify a continuance.

Arkansas Rule of Criminal Procedure 17.1 provides in part:

> (d) Subject to the provisions of Rule 19.4, the prosecuting attorney shall, promptly upon discovering the matter, disclose to defense counsel any material or information within his knowledge, possession, or control, which tends to negate the guilt of the defendant as to the offense charged or would tend to reduce the punishment therefor.

Ark. R. Crim. P. 17.1(d) (2002). The prosecutor must disclose information in sufficient time to permit the defense to make ben-

eficial use of it, and withholding significant evidence that denies the defendant a fair trial is reversible error. *Howard v. State*, 348 Ark. 471, 79 S.W.3d 273 (2002), *cert. denied* 537 U.S. 1051 (2002). However, a defendant cannot rely upon discovery as a total substitute for his own investigation. *Id.*

The threshold question is whether there was a discovery violation. Upon receipt of the telephone records,[4] the State promptly provided Smith's counsel with the list of names and phone numbers of twenty-five people and tape recordings of many of the calls. Because the State met its obligation to promptly provide the information to defense counsel, there was no discovery violation. The question then becomes whether the trial court erred in denying Smith's motion for a continuance.

We review the grant or denial of a motion for continuance under an abuse of discretion standard. *Ware v. State*, 348 Ark. 181, 75 S.W.3d 165 (2002). An appellant must not only demonstrate that the trial court abused its discretion by denying the motion for a continuance, but also show prejudice that amounts to a denial of justice. *Id.* When a motion for continuance is based on a lack of time to prepare, this court considers the totality of the circumstances. *Id.*

The defense had six days to investigate twenty-five telephone calls, many of which were tape recorded.[5] Smith's counsel did not direct the trial court's attention to any particular call or calls that warranted a continuance. On appeal, Smith merely speculates that one of the persons on the list might have been able to testify in support of his affirmative defense of mental incompetence. Furthermore, Smith cannot rely upon discovery as a substitute for his own investigation. He was aware that phone calls were made from the airport, and the information could have been obtained through his own investigation. Under these cir-

---

[4] The State explained to the circuit court that, for various reasons, it had difficulty obtaining the list of phone calls.

[5] Although Smith contended below that he did not have access to the proper equipment to play microcassette tapes, he does not make that argument on appeal. According to the prosecutor, the public defender's office representing Smith at trial and on appeal had provided the prosecutor's office with a microcassette tape recorder.

cumstances, we cannot say that the trial court abused its discretion in denying a continuance. We affirm the trial court on this point as well.

*V. The State's Discovery Obligations — Providing a Witness List*

Next, Smith asserts that the court erred in denying his motion to prohibit any of the State's witnesses from testifying because no witness list was provided by the prosecutor when there were over 150 potential witnesses identified in the prosecutor's file. The State responds that Smith never made a specific request for a witness list, but instead relied on the general provisions of Ark. R. Crim. P. 17.1. Because the prosecuting attorney's office maintained an open-file policy, the State contends that it satisfied the discovery requirements.

■■ Rule 17.1 of the Arkansas Rules of Criminal Procedure provides for the discovery of the names and addresses of persons the State plans to call as witnesses: "[T]he prosecuting attorney shall disclose to defense counsel, upon timely request, . . . the names and addresses of persons whom the prosecuting attorney intends to call as witnesses at any hearing or at trial . . . ." Ark. R. Crim. P. 17.1(a)(i) (2002). Rule 17.2 permits a prosecuting attorney to fulfill his or her discovery obligations through the use of an open-file policy. Ark. R. Crim. P. 17.2 (2002). If a prosecutor's office intends to fulfill its discovery obligations by relying upon an open-file policy, it must make every practicable effort to ensure that the information and records contained in the file are complete and that the documents employed at trial are identical to the material available to the defense in the open file. *Robinson v. State,* 317 Ark. 512, 879 S.W.2d 419 (1994). In order to obtain a reversal of a criminal conviction on the basis of a discovery violation, the appellant must make a showing of prejudice. *Id.* In the event of a discovery violation, the choice of an appropriate sanction is within the trial court's discretion. *Howard v. State, supra.*

■ On June 23, 2000, Smith made a motion for discovery based on Rules 17.1, 17.3, and 17.4. The language generally followed the wording of the rules and requested "[t]he names and

addresses of persons the Prosecuting Attorney intends to call as a witness at any hearing or at trial and a short, plain statement of their anticipated testimony . . . ." However, at no time before the day of trial on July 17, 2001, did Smith make any further requests for a witness list, either by independent motion or at any of the four additional hearings held after the initial hearing. At all times, Smith had access to the State's case file and had been provided with copies of the investigative reports from which the State would select its witnesses. Smith made no objections to the State fulfilling its discovery obligations through an open-file policy until the day of trial, and then he requested only the extreme remedy of prohibiting all of the State's witnesses from testifying. He did not request a continuance or any lesser sanction for the alleged discovery violation.[6] The trial court did not abuse its discretion in denying Smith's eleventh-hour motion to strike all of the State's witnesses.

### VI. Closing Argument — Consecutive Sentencing

For his final point on appeal, Smith asks this court to hold that the trial court erred in sustaining the State's objection to his closing argument regarding the matter of consecutive sentences. Smith contends he was only arguing the law as set out in Ark. Code Ann. § 5-4-403 (Supp. 2001). The trial court is given broad discretion to control counsel in closing arguments, and this court does not interfere with that discretion absent a manifest abuse of discretion. *Leaks v. State*, 339 Ark. 348, 5 S.W.3d 448 (1999) (citing *Noel v. State*, 331 Ark. 79, 960 S.W.2d 439 (1998); *Lee v. State*, 326 Ark. 529, 932 S.W.2d 756 (1996)). It is the trial court's duty to maintain control of the trial and to prohibit counsel from making improper arguments. *Leaks v. State*, *supra* (citing *Peebles v. State*, 305 Ark. 338, 808 S.W.2d 331 (1991)).

During the closing arguments, the State asked the jury to give Smith life sentences rather than sentences for a term of years

---

[6] Smith argues in his appellate brief that the trial court should have given him a continuance to interview the State's witnesses following receipt of a witness list. However, he made no such request below so the issue is not preserved for appellate review.

because he would not have to serve an entire term-of-years sentence before being eligible for parole. Defense counsel then made statements to the jury about consecutive sentences, and the State voiced its objection. The colloquy between defense counsel, the prosecutor, and the trial court was as follows:

> DEFENSE COUNSEL: But if you really, really, really want to punish Dennis Smith, and you want each one of these people out here to know that Dennis Smith is going to remember what he did to them, let me suggest that you do this: Don't give him life because he'll be in there for the rest of his life on what he considers just one episode. And he won't ever think again about these people out here (*Indicating*).

> Let me suggest that you do this: On each kidnapping charge and on each rape charge, he's got to do seventy percent of any years that you give him. And let me suggest that you do this: You give him thirty years on each one of those involving Mrs. Quandt, Mr. Quandt, and the kidnapping of Wes Lawson, and the kidnapping of George Barnes. And he's got to do twenty-one years of each one of those sentences before he starts the next. . . .

> PROSECUTOR: Your Honor, I'm going to object to that. Consecutive and concurrent is the Court's choice and it is not automatic. And I object to the suggestion to this jury that it is.

> THE COURT: I'll sustain that objection.

> DEFENSE COUNSEL: Well, Your Honor, it's a possibility. And I submit to the court that the Court's got every right to stack them and that's proper argument.

> THE COURT: I don't think it is proper argument. I think it goes beyond the law that has been given to the jury, and I'll sustain the objection.

> DEFENSE COUNSEL: Is the Court saying that he's not going to stack any of these charges?

> THE COURT: No. I'm saying that it's not a jury consideration. It's my decision. It's improper argument on the law that's been given to this jury. So I sustain the objection.

 The power to determine whether multiple sentences are to run consecutively or concurrently is established by statute:

(a) When multiple sentences of imprisonment are imposed on a defendant convicted of more than one (1) offense, . . . the sentences shall run concurrently unless, upon recommendation of the jury or the court's own motion, the court orders the sentences to run consecutively.

\* \* \* \*

(d) The court is not bound by recommendations of the jury concerning sentencing options under this section.

Ark. Code Ann. § 5-4-403(a), (d) (Supp. 2001). The decision to impose consecutive or concurrent sentences lies solely within the province of the trial judge, and the appellant assumes a heavy burden of showing that the trial judge failed to give due consideration in the exercise of that discretion. *Smallwood v. State*, 326 Ark. 813, 935 S.W.2d 530 (1996) (citing *Love v. State*, 324 Ark. 526, 922 S.W.2d 701 (1996)).

Defense counsel's statement to the jury — "he's got to do twenty-one years of each one of those sentences before he starts the next" — was not a correct statement of the law because it clearly suggests that multiple sentences automatically run consecutively. Even defense counsel stated to the trial judge that consecutive sentences were only a possibility. Yet, there was no offer to restate the argument so that it would represent an accurate statement of the law. As noted above, the trial judge has the responsibility to prohibit counsel from making improper arguments. *Leaks v. State, supra.* Because defense counsel's argument to the jury was not a correct statement of the law, the trial court did not err in sustaining the State's objection.

For the foregoing reasons, the convictions and sentences are affirmed, excepting first-degree battery, which is modified as stated above. The record has been reviewed for other reversible error, as required by Supreme Court Rule 4-3(h), and none has been found.

Affirmed as modified.

GLAZE, IMBER, and THORNTON, JJ., concurring in part and dissenting in part.

ANNABELLE CLINTON IMBER, Justice, concurring in part; dissenting in part. I agree with the majority, except I would affirm on all points. The first-degree battery statute clearly encompasses Mr. Smith's conduct in striking Mrs. Quandt repeatedly on the head with the butt of his gun.

The relevant portion of the first-degree battery statute provides as follows: "(a) A person commits battery in the first degree if . . . [w]ith the purpose of causing physical injury to another person he causes physical injury to any person by means of a firearm." Ark. Code Ann. § 5-13-201(a)(7) (Repl. 1997). The second-degree battery statute provides, in relevant part, that "[a] person commits battery in the second degree if . . . [w]ith the purpose ofcausing physical injury to another person, he causes physical injury to any person by means of a deadly weapon other than a firearm . . . ." Ark. Code Ann. § 5-13-202(a)(2) (Supp. 2001). The Arkansas Criminal Code specifically defines the term "firearm:

> "Firearm" means any device designed, made, or adapted to expel a projectile by the action of an explosive or any device readily convertible to that use, *including such a device that is not loaded or lacks a clip or other component to render it immediately operable*, and components that can readily be assembled into such a device;

Ark. Code Ann. § 5-1-102(6) (Supp. 2001) (emphasis added). Likewise, "deadly weapon" is defined as:

(A) A firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious physical injury; or

(B) Anything that in the manner of its use or intended use is capable of causing death or serious physical injury

Ark. Code Ann. § 5-1-102(4) (Supp. 2001). Mr. Smith claims, and the majority agrees, that under the above-cited statutory provisions, he did not commit first-degree battery because he did not cause physical injury by *shooting* a firearm and, thus, did not cause physical injury *by means of* a firearm as required by section 5-13-201(a)(7). He concludes by stating that he used a "deadly weapon

other than a firearm" and, therefore, was only guilty of second-degree battery.

The General Assembly amended the original criminal code to specify that the use of a firearm in the commission of a battery would be a factor that distinguishes first-degree battery from second-degree battery. *See* Ark. Stat. Ann. §§ 41-1601, 41-1602 (Repl. 1977). In construing section 5-13-201(a)(7) just as it reads, giving the words their ordinary and usually accepted meaning in common language, it is clear that the statute does not qualify the means by which a firearm is used to cause injury. If the General Assembly had meant to limit the offense to *shooting* a firearm, it could have said so, as it has in other provisions of the criminal code. *See* Ark. Code Ann. § 5-13-310(a)(1) (Repl. 1997) ("[a] person commits a terroristic act when . . . [h]e shoots at . . . an object with the purpose to cause injury."); Ark. Code Ann. § 5-74-107(a)(1) (Repl. 1997) ("[a] person commits unlawful discharge of a firearm from a vehicle in the first degree if he knowingly discharges a firearm from a vehicle and thereby causes death or serious physical injury . . . ."). More importantly, the statutory definition of firearm includes guns that are not immediately operable. Ark. Code Ann. § 5-1-102(6). Thus, because a gun need not be operable to be a firearm, physical injury by means of a firearm is not limited to the shooting of a firearm.

The majority states that we need not consider the statutory definition of firearm, and then proceeds to conclude that the phrase "by means of a firearm" means the use of a firearm *as a firearm*. I fail to understand how such a conclusion can be reached without reference to the statutory definition of a firearm, which includes "a device that is not . . . immediately operable . . . ." Ark. Code Ann. § 5-1-102(6). In other words, the majority's interpretation of the phrase "by means of a firearm" simply defies common sense. On the one hand, a firearm must be used *as a firearm*; but, on the other hand, the statutory definition of "firearm" is irrelevant. In short, the majority ignores the statutory definition of "firearm."

For the above-stated reasons, I must conclude that Mr. Smith's actions in striking Mrs. Quandt with the butt of a gun

constitute first-degree battery within the plain meaning of Ark. Code Ann. § 5-13-201(a)(7). The trial court did not err in denying Mr. Smith's motion for directed verdict on the charge of first-degree battery.

GLAZE and THORNTON, JJ., join.