Byron Lamont WALLACE and Rodney Fitzgerald Bledsoe *v.*
STATE of Arkansas

CR 96-367                                     931 S.W.2d 113

Supreme Court of Arkansas
Opinion delivered October 21, 1996
[Petition for rehearing denied November 18, 1996].

*Jeff Rosenzweig,* for appellant Byron Lamont Wallace.

*Bailey Law Firm,* by: *Rita F. Bailey,* for appellant Rodney Fitzgerald Bledsoe.

*Winston Bryant,* Att'y Gen., by: *J. Brent Standridge,* Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. This is a consolidated appeal by appellants Byron Lamont Wallace and Rodney Fitzgerald Bledsoe. Wallace was convicted of residential burglary, four counts of aggravated robbery, and two counts of theft. He was sentenced to 27 years in prison. A probationary sentence pertaining to Wallace was also revoked and a six-year sentence to run concurrently was assessed. Bledsoe was convicted of the same crimes as Wallace and was sentenced, as a habitual offender, to 45 years in prison. We find the

points raised by Wallace and Bledsoe on appeal to be without merit, and we affirm.

On the evening of December 7, 1993, Marcus Sanders, Steven Campbell, Anthony Hatchett, Marvin Weathersby, and Juan Boykins were in Sanders's Little Rock home playing Nintendo and working on music for their rap band. At approximately 6:50 p.m., a man later identified as Wallace knocked on the door and asked if Joe was there. After Sanders went to the door and answered that no such person was present, Wallace forced his way into the house with two other men, pulled out a handgun, and announced that it was a robbery. One of the men, later identified as Bledsoe, brandished a pipe bomb. The third robber was never identified and was not tried with Wallace and Bledsoe.

Once inside, Wallace led Sanders at gunpoint into the bedroom, where Sanders gave him $500 in cash. Sanders was then taken back into the living room, where he and the other men were forced to remove their clothes and lie down on the floor. Wallace and the third man then proceeded to go through the victims' pockets and take jewelry and $300 or $400 in additional cash. According to Marcus Sanders, Bledsoe stood by the front door, yelled, and punched holes in the wall with the pipe bomb.

After the money and jewelry were taken, the robbers began to leave, but on the way out, Bledsoe lit the pipe bomb and threw it on the floor between Sanders and Juan Boykins. Campbell testified that Wallace then fired two shots back into the house as the five victims scattered for cover. The pipe bomb detonated. Although none of the men was seriously injured, windows were broken, furniture was destroyed, and the ceiling and walls buckled from the explosion.

Wallace and Bledsoe were charged with counts of residential burglary, aggravated robbery, and theft. Bledsoe was further charged as a habitual offender. The men were convicted and sentenced as set out above.

## I. Appellant Wallace

Wallace first contends that the trial court abused its discretion in allowing testimony of his flight and arrest. At trial, the State called Officer David Smith of the Little Rock Police Department to describe the events surrounding Wallace's arrest. Officer Smith

stated that he was working with the Street Crimes Unit, a squad of five patrolmen and one sergeant that operated in plain clothes and unmarked cars to assist in the service of arrest warrants. On December 9, 1993, at 11:00 p.m., he testified that he received information that detectives were attempting to serve a warrant on Wallace. At this point, Wallace's defense counsel objected to Officer Smith's testimony based on relevance and unfair prejudice. The objection was overruled.

Officer Smith continued that he and his partner first made contact with Wallace at 11:20 p.m. in the College Station area of Little Rock. He stated that he pulled up beside an unknown car, and a young man, whom the police officer identified as Wallace, stepped half-way out of his car. The police officer stated that Wallace asked them where Stout Street was, which was the street they were on. Officer Smith testified that he told Wallace that he was lost. He did not identify himself as a police officer. Wallace then got in his car and proceeded along Stout Street ahead of Officer Smith's car. Officer Smith called for assistance. Sergeant Wilson, also of the Little Rock Police Department, arrived in an unmarked car and attempted to stop Wallace's car as he turned from Stout Street to Avant Street by turning on his blue lights. Officer Smith testified that Wallace spun his tires and "took off." The police officer followed down the three-block road whereupon Wallace and a passenger left his car and fled on foot. Officer Smith testified that he and other police officers identified themselves as police officers. They followed Wallace and his companion into a wooded area. Officer Smith stated that he apprehended Wallace, and in the course of doing so, Wallace lunged at him and attempted to grab his gun.

■ Wallace argues that this testimony was admitted in violation of Rule 403 of the Arkansas Rules of Evidence. Wallace also requests that we reverse the trial court because Officer Smith's testimony was evidence of "other crimes, wrongs, or acts" under Ark. R. Evid. 404(b). We do not address this latter issue because it was not raised before the trial court. It is blackletter law that issues may not be raised for the first time on appeal. *See, e.g., Hill* v. *State*, 325 Ark. 419, 931 S.W.2d 64 (1996); *Stewart* v. *State*, 320 Ark. 75, 894 S.W.2d 930 (1995).

■ A determination by the trial court of no unfair prejudice under Arkansas Rule of Evidence 403 will not be reversed absent a manifest abuse of discretion. *See Killcrease* v. *State*, 310 Ark. 392,

836 S.W.2d 380 (1992); *Logan* v. *State*, 300 Ark. 35, 776 S.W.2d 341 (1989). Wallace argues that the evidence should have been excluded because the apprehension occurred two days after the crime at Sanders's home, that he denied his guilt in those events based on an alibi, that the police officers never identified themselves to him, that the police officers were in unmarked cars, and that the chase occurred late at night on an unlit, dead-end street. The crux of his argument is that a reasonable person might not have believed the officers to be authentic policemen.

This court has held that flight to avoid arrest or trial is admissible as a circumstance in corroboration of evidence tending to establish guilt. *See Hill* v. *State, supra; Cooper* v. *State*, 317 Ark. 485, 879 S.W.2d 405 (1994); *Ricks* v. *State*, 316 Ark. 601, 873 S.W.2d 808 (1994); *Killcrease* v. *State, supra.* Wallace asks us to rule differently based, in part, on the fact that he was arrested approximately two days after the events at Marcus Sanders's house as opposed to being caught immediately fleeing the scene. This court, however, has previously rejected this argument. *See Murphy* v. *State*, 255 Ark. 90, 498 S.W.2d 884 (1973) (holding evidence of flight after the commission of a crime was admissible even though it did not occur immediately after the crime). *See also Riddle* v. *State*, 303 Ark. 42, 791 S.W.2d 708 (1990) (allowing evidence in an aggravated-assault and theft-by-receiving trial that the defendant fled from officers in a car that had been stolen two days earlier). Furthermore, the credibility of Wallace's alibi defense and belief that the officers were not authentic was a matter to be weighed by the trier of fact. *See Cooper* v. *State, supra; Killcrease* v. *State, supra.* There was no abuse of discretion.

For his second point, Wallace asserts that the trial court erred in failing to instruct the jury on the lesser-included offense of robbery. The trial court refused to instruct on robbery because it found that there was no rational basis for that instruction in the evidence. We do not reach this argument because neither the record nor the abstract contains the robbery instruction requested by Wallace. This court's position on proposed jury instructions was stated succinctly in *Stewart* v. *State*, 316 Ark. 153, 157-58, 870 S.W.2d 752, 755 (1994):

> The instruction in question was not proffered into the record, and we do not have it before us for our review. This court has stated that it is the appellant's duty to bring up a

record sufficient to show that the trial court erred. *Enos* v. *State*, 313 Ark. 683, 858 S.W.2d 72 (1993). In order to preserve an objection to an instruction for appeal, the appellant must make a proffer of the instruction to the judge. *Vickers* v. *State*, 313 Ark. 64, 852 S.W.2d 787 (1993). That proffered instruction must then be included in the record and abstract to enable the appellate court to consider it. *Camp* v. *State*, 288 Ark. 269, 704 S.W.2d 617 (1986). An instruction that is not contained in the record is not preserved and will not be addressed on appeal. *Marcum* v. *State*, 299 Ark. 30, 771 S.W.2d 250 (1989).

*See also Mings* v. *State*, 318 Ark. 201, 884 S.W.2d 596 (1994); *Hart* v. *State*, 301 Ark. 200, 783 S.W.2d 40 (1990).

For his third point, Wallace complains that a one-year probationary sentence relating to a previous misdemeanor conviction for one count of battery in the third degree was revoked as if the conviction had been for two counts of battery in the second degree, a felony. The judgment reflects that Wallace was sentenced to six years in prison for one count of second-degree battery on the revocation of the probationary sentence though the trial court in its ruling referred to two counts.

The circumstances surrounding this issue are confused, and we, therefore, decline to reach the point. The abstracted docket sheet for the battery charge reflects a misdemeanor conviction. Wallace also abstracts the judgment relating to the revocation itself which refers to second-degree battery and imprisonment of six years. However, he fails to abstract the judgment for the underlying battery conviction for which Wallace received a probationary sentence. Moreover, we note that the judgment contained in the record which relates to the previous battery conviction is virtually illegible. We cannot decide this issue without an abstract of the material evidence, and we deem the abstract on this point to be flagrantly deficient. Ark. Sup. Ct. R. 4-2(b).

## II. Appellant Bledsoe

Bledsoe's sole point on appeal is that two victims' identification of him from a photo lineup should have been suppressed because the lineup did not include the photograph of *Anthony* Bledsoe, a man named by Marcus Sanders as one of the offenders. We also decline to reach this argument because Bledsoe's abstract is

fatally deficient. The abstract not only lacks a motion to suppress the lineup predicated on this point, but there is no ruling from the trial court in the abstract concerning this issue. In short, we cannot tell from the abstract whether this precise point was raised to and considered by the trial court. We have held similarly in other cases. *See, e.g., Watson* v. *State*, 313 Ark. 304, 854 S.W.2d 332 (1993). We affirm the trial court on this point.

Affirmed.