Tommy PHILLIPS *v.* STATE of Arkansas

CR 00-992                                    40 S.W.3d 778

Supreme Court of Arkansas
Opinion delivered April 19, 2001

*William A. McLean,* for appellant.

*Mark Pryor,* Att'y Gen., by: *David R. Raupp,* Sr. Ass't Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. Appellant Tommy Phillips was convicted of capital murder and two counts of aggravated robbery in the Pulaski County Circuit Court. He was sentenced to life imprisonment without parole for capital murder, life imprisonment for one count of aggravated robbery, and a term of forty years for the second count of aggravated robbery. This is Mr. Phillips's second appeal. In *Phillips v. State*, 338 Ark. 209, 992 S.W.2d 86 (1999), he appealed the denial of his motion to dismiss on double jeopardy grounds. We affirmed the trial court, holding that Mr. Phillips impliedly consented to the granting of a mistrial in his first trial when he failed to object to the mistrial that was clearly ordered for his benefit. *Id.* Mr. Phillips now appeals his conviction on retrial. For reversal, Mr. Phillips argues that there was insufficient evidence to connect him to the crimes, that the trial court should have suppressed the identifications made by the surviving victim because they were unreliable, and that the trial court erred when it allowed the introduction into evidence of a letter written by Mr. Phillips because the prejudicial effect of the letter outweighed its probative value. We find no error and affirm.

## I. Sufficiency of the Evidence

For his first point on appeal, Mr. Phillips argues that the evidence connecting him to the crime was insufficient to support a conviction. Specifically, he argues that Carr Stalnaker, the surviving witness, was unable to strongly and reliably identify him as the perpetrator, that the testimony of Cory Caldwell that Mr. Phillips confessed his involvement in the crime was suspect and unreliable, and that the written confession made by Mr. Phillips in a letter to Mr. Caldwell was subject to more than one interpretation and was, therefore, unreliable. The State argues that Mr. Phillips's challenge to the sufficiency of the evidence is no more than a challenge to the weight and credibility of the evidence and should be rejected. We agree.

As a threshold matter, we note that Mr. Phillips has preserved his challenge to the sufficiency of the evidence only as to the charge of capital murder. At the close of the State's case-in-chief, Mr. Phillips moved for a directed verdict "on the charge of capital murder" because the evidence was insufficient to connect him to the crime. At the close of all evidence, Mr. Phillips renewed his motion "for the same factual and legal arguments made at that

time." Therefore, only the sufficiency of the evidence to support the conviction for capital murder is properly before us.[1] *See Woods v. State*, 342 Ark. 89, 27 S.W.3d 367 (2000).

■ ■ When we review a challenge to the sufficiency of the evidence, we will affirm the conviction if there is substantial evidence to support it. *Fudge v. State*, 341 Ark. 759, 20 S.W.3d 315 (2000). Evidence is substantial if, when viewed in the light most favorable to the State, it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Id.* The credibility of witnesses is an issue for the jury and not the court. *Cobb v. State*, 340 Ark. 240, 12 S.W.3d 195 (2000). The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.* We will disturb the jury's determination only if the evidence did not meet the required standards, thereby leaving the jury to resort to speculation and conjecture in reaching its verdict. *Fudge v. State, supra.*

The evidence to convict Mr. Phillips was substantial. On the night of February 17, 1997, two men robbed the Freight Damaged Foods Store in Little Rock. The store closed at 6:00 p.m., at which time Carr Stalnaker, an employee of Frito-Lay, was stocking products on the shelves at the Freight Damaged Foods Store. He and the store's assistant manager, Van Dean Clouse, were the only people remaining in the store when, at approximately 6:25, two men wearing bandanas and dark knit caps appeared and robbed the store. Mr. Stalnaker subsequently identified the two robbers as Appellant Tommy Phillips and Cochise Miles. Phillips and Miles held Stalnaker and Clouse at gunpoint during the robbery, then forced them into a cooler at the back of the store. While walking towards the cooler, Mr. Stalnaker heard Mr. Phillips saying repeatedly that "if there's not any more money than this, somebody's gonna die." In an effort to appease Mr. Phillips, Mr. Stalnaker gave him all of the money he had from his delivery route.

After the four men entered the cooler near the back door, both Mr. Stalnaker and Mr. Clouse informed the robbers that they had

---

[1] Although only the sufficiency of the evidence to support a conviction for capital murder is properly before us, we note that, as a practical matter, our holding in this case applies equally to the two aggravated robbery convictions. The challenge raised by Mr. Phillips in his motion for directed verdict was based upon an alleged lack of evidence to connect him to the crime, i.e. identity evidence. There is no dispute that the same individual who committed the aggravated robberies committed the capital murder. Therefore, if the evidence was sufficient to connect Mr. Phillips to the crime of capital murder, it was necessarily sufficient to connect him to the crimes of aggravated robbery.

families and asked the men to just leave with the money. Mr. Phillips told them to shut up, and then he repeatedly pointed his gun at Mr. Clouse's head and lowered it. Mr. Stalnaker recognized that Mr. Phillips was "psyching himself up" to kill Mr. Clouse. Mr. Phillips eventually shot Mr. Clouse in the head. As soon as Mr. Stalnaker realized what had happened, he ran out of the cooler and through an open back door, escaping down an alley until he located a pay phone and called 911. The robbers shot at him several times as he was running away. While chasing Mr. Stalnaker down the alley, Mr. Phillips tripped and his handgun discharged, causing him to shoot himself in the arm. Phillips and Miles then ran through the woods to a nearby equipment rental business where Mr. Miles's bandana and cap were discovered the following day, along with live 9mm and .22 caliber rounds similar to those found at the Freight Damaged Foods Store.

Following the robbery, Mr. Phillips called Cory Caldwell and asked him to come over to the house where he was staying. He informed Mr. Caldwell on the telephone that he had been shot. Upon arriving at the house, Mr. Caldwell noticed that the wound on Mr. Phillips's arm appeared to be fresh. The next morning, Mr. Caldwell agreed to go to Texas with Mr. Phillips and his grandfather, Clayton Phillips. They left for Texas that same day. During the drive to Texas, Mr. Phillips admitted to Mr. Caldwell that he and Mr. Miles had committed a robbery and that he shot the store manager in the cooler because he only had "two hundred and something dollars on him at the time." As related by Mr. Phillips to Mr. Caldwell, the "bread man" then ran out the back door, whereupon the robbers set out in pursuit of the man with Mr. Phillips shooting at him. Mr. Phillips tripped during the chase and his gun accidentally went off, striking him in the arm. After the "bread man" got away, Miles and Phillips kept running, jumped over a fence, and hid behind another building.

Mr. Phillips also sent a letter to Mr. Caldwell while in jail in which he admitted to killing Mr. Clouse, stating "I know I did murder that man." Mr. Caldwell testified that he understood the letter to be an admission of guilt, even though Mr. Phillips argues that the context of the letter reveals that his intent was not to admit murder, but to entreat Mr. Caldwell to testify truthfully.

It is clear that substantial evidence supports the conviction of Mr. Phillips for capital murder. The State presented the testimony of an eyewitness who positively identified Mr. Phillips as the shooter and two confessions by Mr. Phillips. It was within the province of the jury to resolve any conflicts or inconsistencies in

this evidence. *Cobb v. State, supra.* In light of the eyewitness identification and the confessions by Mr. Phillips, we cannot say the jury was forced to resort to speculation and conjecture to find Mr. Phillips guilty of capital murder. We, therefore, affirm the trial court's refusal to direct a verdict of acquittal.

## *II. Eyewitness Identification*

Mr. Phillips next challenges the trial court's admission of the in-court and out-of-court identifications made by Carr Stalnaker, the surviving witness. Mr. Phillips argues that the identifications were not sufficiently reliable to be admitted. The State responds by arguing that we should not reach this argument because the threshold issue is not whether the identifications were reliable; rather, the threshold issue is whether there was a "very substantial likelihood of irreparable misidentification" in the pretrial identification and whether any suggestive line-up procedures employed by the State tainted either identification. Alternatively, the State argues that the trial court should be affirmed because, under the totality of the circumstances, the identifications do not fail the six-factor test for reliability. *See Kimble v. State,* 331 Ark. 155, 959 S.W.2d 43 (1998).

Normally the reliability of eyewitness identification of a defendant is a question for the jury. *Synoground v. State,* 260 Ark. 756, 543 S.W.2d 935 (1976). If it is not argued that the procedures leading to the identification were constitutionally infirm, it is up to the jury to determine whether the eyewitness identification is reliable. *Sanders v. State,* 276 Ark. 342, 635 S.W.2d 222 (1982); *Synoground v. State, supra.*

In this case, Mr. Phillips has asserted no constitutional infirmity in the eyewitness identification procedures. He argues only the reliability of the identification. In the absence of an allegation of suggestive procedures tainting the identification process, the reliability of Mr. Stalnaker's identification of Mr. Phillips was a question for the jury. Consequently, we hold that the trial court did not err by refusing to suppress the identifications made by Mr. Stalnaker.

## *III. The Written Confession*

For his final argument on appeal, Mr. Phillips asserts that the trial court erred when it allowed the introduction into evidence of a letter written by Mr. Phillips and sent to Cory Caldwell. He argues

that the prejudicial effect of the confession contained within the letter far outweighed the letter's probative value. According to Mr. Phillips, it is obvious from a review of the entire letter that the alleged confession contained within the letter could have been the result of a grammatical error rather than an actual confession. The State again argues that this is merely a challenge to the weight of the evidence, not its admissibility.

■■ Rule 403 of the Arkansas Rules of Evidence provides that:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

We have repeatedly held that the balancing mandated by Rule 403 is a matter left to a trial court's sound discretion, and thus, we will not reverse the court's ruling absent a showing of manifest abuse. *Mixon v. State*, 330 Ark. 171, 954 S.W.2d 213 (1997) (citing *Wallace v. State*, 326 Ark. 376, 931 S.W.2d 113 (1996); *Scott v. State*, 325 Ark. 267, 924 S.W.2d 248 (1996)). Furthermore, when evidence of guilt is overwhelming, slight errors in the introduction of evidence do not constitute reversible error. *Kidd v. State*, 330 Ark. 479, 955 S.W.2d 505 (1997).

The letter written by Mr. Phillips to Mr. Caldwell states as follows:

> What's up Player? Yea, I know you wasn't expecting this, but here I am. What's been going on with you? Me, myself, I've been trying to maintain and keep my head high. I heard you was locked up — up state. I hate it for you, because this right here is not a place for a brother to be. I've been going throu (*sic*) some changes. And all of them haven't been bad. I got to admitt (*sic*) I grew up in the county jail. I've learned some things in here that I wouldn't have learned running the streets. For one I got my G.E.D. I have accomplished that since I've been in here. I have had time to think a lot of things out and try to find myself, because I was lost. I have found out about God. You know when we were in the streets that's all we knew. When Slope got out the game and started saying he was living for God we thought he was crazy. But now that I think about it we were the ones that were crazy. He saw something that we didn't see. I saw your sister the other day when she came to see you. She stopped and talked to me. I heard that they want you to

testify again. Corey I'm ready to come home. You can help me get there. I know they want you to testify and you can just tell them the truth. You and I know what happened. Gone (*sic*) and tell them that the prosecuting attorney and the detectives said that they were going to make a case on you if you didn't get up there and tell them lies on me. Isn't that what happened? Gone (*sic*) tell them that I didn't tell you about a murder on the way to Texas. And that I didn't tell you about a murder in front of Tina and my Grandma. Gone (*sic*) tell them that Denise didn't take you over my house on the night of the murder. I wasn't even there. Gone (*sic*) tell them that the detectives help you and Denis (*sic*) fabricate the story against me hoping to help yourself out and get a reward. Tell them that Denise lied on the stand last time. Gone (*sic*) tell them that you were drunk when you went in and the detectives got you to say all them things. Corey when I told you I wasn't mad at you I wasn't lying. I know you wouldn't have did it they wouldn't have threatned (*sic*) you. You and I are the tightest out of all the homeboys. Show me some love. I believe I have suffered long enough for my sins, *but I know I did murder that man.* If you are going to tell them what really happened don't tell that prosecuting attorney because then she won't let you testify. Just play along with her and when you get on the stand gone (*sic*) and tell them. Tell everybody I said what's up. I'll see you in that world. Let's get ourselves together and make something out of our lives while we still can. We got people out there who still care about us. This is not the place to be.

> I ain't mad at you
> /s/ T.J.

(Emphasis added.)

██ The trial court did not manifestly abuse its discretion by allowing the State to introduce this letter. The State argued to the jury that Mr. Phillips confessed to the robbery and the murder of Mr. Clouse by stating "I know I did murder that man." An admission of guilt by the accused is relevant evidence of highly probative value. Although the letter is certainly open to more than one interpretation, as argued by Mr. Phillips, the fact that the letter could have a negative impact on him is insufficient to exclude it under Rule 403. In order for the letter to be excluded under Rule 403's balancing test, the danger of unfair prejudice must substantially outweigh the probative value of the letter. Ark. R. Evid. 403. Counsel was free to argue an alternative interpretation of the letter to the jury in order to mitigate any prejudice; however, Rule 403 does not require the court to suppress evidence of guilt simply

because it is open to interpretation. Whether the letter was in fact a confession was an issue for the jury to decide. We conclude that the trial court did not abuse its discretion when it declined to exclude the letter under Rule 403.

*IV. 4-3(h)*

The transcript of the record in this case has been reviewed in accordance with our Rule 4-3(h) which requires, in cases in which there is a sentence to life imprisonment or death, that we review all prejudicial errors in accordance with Ark. Code Ann. § 16-91-113(a). None have been found.

Affirmed.