Carmen Hendrickson ATKINSON *v.* STATE of Arkansas

CR 01-097 64 S.W.3d 259

Supreme Court of Arkansas
Opinion delivered January 10, 2002

*John C. Stratford*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

TOM GLAZE, Justice. Appellant, Carmen Atkinson, appeals the June 23, 2000, judgment and commitment order of the Lonoke County Circuit Court, convicting her of first-degree murder in the death of Joshua Smith and sentencing her to life in prison. Atkinson raises two points for reversal: (1) the trial court committed reversible error by not granting her motions for directed verdict; and (2) the trial court committed reversible error by failing to give Atkinson's requested instruction on second-degree murder. Neither issue has merit. In addition, the State, as required by Ark. Sup. Ct. R. 4-3(h), calls to our attention an error committed by the trial court that was neither abstracted nor briefed by Atkinson. The State argues the error was not prejudicial to Atkinson and, for that reason, is not reversible. We agree.

Joshua Smith had been Atkinson's long-time boyfriend and was the father of two of her children. In January of 1998, Atkinson had an affair with Richard Lackie, whereupon she and her children moved in with Lackie. Smith and Lackie had been friends and often went fishing, hunting, and drinking together. On August 18, 1998, Lackie and Smith went to a remote field, where they shot snakes, squirrels, and rabbits. On this occasion, Lackie then shot Smith in the back of the head with a shotgun, from a range of less than three feet. Lackie then took a shovel, covered Smith's body with some dirt, and left.

The next day, Atkinson and Lackie drove to a salvage yard in Little Rock, where Atkinson sold Smith's car for $100. In September of 1998, Atkinson went to the home of Smith's mother, Judy

Smith, and told her that Smith was out of town and that he was living with Atkinson and Lackie and wanted his mail transferred to their house. On October 1, 1998, Lackie was arrested at a bank after attempting to obtain cash from an automatic teller machine ("ATM") with Smith's ATM card. Atkinson had accompanied Lackie to the bank, but climbed into the driver's seat and drove away as Lackie was taken away in handcuffs. Atkinson subsequently parked the car at a gas station in Butlerville and had a friend, Regina Williams, drive her home. Atkinson was picked up at her home later in the day on October 1, 1998, and was then interviewed by the police.

Lackie ultimately entered into an agreement with the State to plead guilty to the murder of Smith, in exchange for a thirty-five year sentence, and to testify against Atkinson. Atkinson was arrested on June 25, 1999, for first-degree murder in the death of Smith, pursuant to Ark. Code Ann. § 5-10-102 (Repl. 1997).

At trial, Lackie testified that Atkinson had asked him to kill Smith. Specifically, Lackie testified that Atkinson, with whom he was living, told him, beginning in June 1998, she wanted Smith dead and regularly asked him to kill Smith. Lackie testified that Atkinson came up with the plan for him to take Smith and kill him where no one could find him so that she could have his social security income check. Atkinson was not present at the shooting. Lackie testified that he killed Smith after Smith threw sand in his eye during an argument. Lackie further testified that he decided to kill Smith just a second before it happened, and that he was under the influence of drugs at the time of the killing. Lackie also testified that he would not have killed Smith but for the fact that Atkinson had asked him to do so. Lackie stated that on the day that he killed Smith, Atkinson had suggested to him that it was "a good day to . . . get rid of [her] problem," which Lackie interpreted as meaning that it was a good day to kill Smith.

Anthony Hughes similarly testified that Atkinson, with whom he had been sexually involved since February of 1998, had asked him to kill Smith on one occasion in July or August of 1998. Hughes further testified that Atkinson had discussed killing Smith herself or talking Lackie into killing Smith on several other occasions. Hughes also testified that Atkinson had asked him if he knew where Atkinson could get a gun or if he could find her a gun, and, upon asking her why she wanted a gun, she responded, saying she was going to get rid of Smith.

Shawn Lackie, Richard Lackie's brother, testified that at a party on September 12, 1998, Richard Lackie had asked him to chop the head, arms, and legs off a body because there were tattoos on them, but that he had told Richard that he was crazy and walked off. Dr. Stephen Erickson, associate medical examiner at the state crime lab, testified that he identified Smith's body through dental records and that Smith's body had a tattoo on his left arm with "Carmen" and a tattoo on his lower leg with "Carmen," a heart, and "Josh." Shawn Lackie further testified that he told his father about Richard's request; the father told him that Shawn needed to report it to the police. Shawn Lackie then testified that he made a statement to Lonoke County officers, who set him up with a wire to try to get Richard Lackie to tell Shawn where Smith's body was located. Shawn Lackie testified that he went over to the home of Atkinson and Richard Lackie and asked Richard if he still wanted him to get rid of the body. Shawn testified that when Lackie said "head, arms, and legs" in front of Atkinson, she just started laughing. Shawn Lackie further testified that when he asked Atkinson and Richard if it was Smith, they looked at each other and just laughed and said, "No." Shawn stated that the next day, he and an undercover officer, who was wired, went to Richard Lackie's house and told Richard that the undercover officer was the person that was ready to do the job. Shawn testified that the undercover officer asked Richard where Smith's body was, and Richard gave them some directions, but the directions did not lead the police to a body.

Frank Sturdivant, a Lonoke County criminal investigator in the investigation into Smith's death, testified that Atkinson made an oral statement on October 1, 1998, in which she denied knowing the whereabouts of Smith's body. However, Sturdivant further testified that Atkinson's written statement rendered on October 1, 1998, gave a description of the geographical location of the place where the murder had taken place; Sturdivant went to that geographical location and subsequently located Smith's body. Sturdivant testified that Atkinson told him in her October 1, 1998, statement that, in September 1998, Richard Lackie had told her about Smith's death, but that in Atkinson's October 2, 1998, statement, which was transcribed from an audio tape, Atkinson told him that Richard Lackie told her about Smith's death on August 18, 1998.

Kandi Howell testified that she was present at a conversation after Atkinson was arrested in connection with Smith's homicide. Howell stated that when Atkinson was asked how she was able to

get one man to kill another for her, Atkinson responded by saying that she could get a man to kill for her with sexual favors.

Wanda Malone testified that Atkinson told her, when they were in prison together in 1998, that she made Richard Lackie kill Smith, and that Atkinson told Wanda that she told Richard to cut his head, arms, and legs off because of the tattoos.

Atkinson then testified in her own defense, and denied making the post-arrest statements to Howell and Malone. Atkinson further testified that she had discussed wanting Smith dead with both Richard and Anthony Hughes, but that she was never serious about it and that she never asked either Lackie or Hughes to kill Smith. Atkinson testified that she dropped the car off at the gas station in Butlerville because she did not want to be found with the car, but she did not know why. Finally, Atkinson testified that she wrote a letter to Richard Lackie, in which she referred to the solicitation of murder charge against her, and asked Richard if he would "destroy any kind of evidence for me that states I had something to do with this."

At the close of the State's case, Atkinson moved for a directed verdict. The trial court denied Atkinson's motion for a directed verdict, stating, "there were sufficient facts for the jury to consider and it would be a fact question for the jury." At the close of Atkinson's case, she renewed her motion for a directed verdict. The trial court again denied Atkinson's motion for a directed verdict, stating that there was "ample evidence presented to the jury, and it is a factual question."

Prior to the case being submitted to the jury, a discussion occurred between the State, Atkinson, and the trial court regarding Atkinson's request for jury instructions on lesser-included offenses. The State contended that the jury should not be instructed as to any lesser-included offenses. Atkinson disagreed, contending that she was entitled to a second-degree murder instruction because there was sufficient evidence to support a second-degree murder instruction. Specifically, Atkinson contended that because Richard Lackie testified that he shot Smith on a sudden impulse, Atkinson was entitled to a second-degree murder instruction because there was lack of premeditation. The trial court rejected Atkinson's argument, finding that it was not required to give a second-degree murder instruction in a case where, viewing the facts in the light most favorable to the defendant, there was no rational basis for a

verdict acquitting Atkinson of first-degree murder and convicting her of the included offense.

 The case was then submitted to the jury, and, on June 22, 2000, the jury returned a guilty verdict against Atkinson and sentenced her to life in prison. The judgment and commitment order of the Lonoke County Circuit Court was filed on June 23, 2000. It is from this order that Atkinson brings this appeal. Of her two points on appeal, we first consider Atkinson's argument that there was insufficient evidence to convict her of first-degree murder because double jeopardy considerations require this court to consider a challenge to the sufficiency of the evidence prior to the other issues on appeal. *See, e.g., Haynes v. State*, 346 Ark. 388, 58 S.W.3d 336 (2001).

Atkinson argues that the trial court erred in denying her motion for a directed verdict based upon the sufficiency of the evidence because (1) Atkinson did not have the intent or purpose to cause the death of Smith and did not cause his death; (2) Richard Lackie testified that he decided to kill Smith in the woods behind a church, and there was no testimony that Atkinson was there; (3) Atkinson was not an accomplice, in that she did not directly participate in the commission of the offense and did not have the purpose of promoting or facilitating the commission of the offense; and (5) the testimony of Richard Lackie had not been substantiated by any believable testimony. We disagree.

 It is well settled that a motion for a directed verdict is a challenge to the sufficiency of the evidence. *E.g., Smith v. State*, 346 Ark. 48, 55 S.W.3d 251 (2001) (citing *Durham v. State*, 320 Ark. 689, 899 S.W.2d 470 (1995)). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Smith, supra*. Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id*. When a defendant challenges the sufficiency of the evidence convicting him, the evidence is viewed in the light most favorable to the State. *Id*. Only evidence supporting the verdict will be considered. *Id*.

 Circumstantial evidence provides the basis to support a conviction if it is consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Sublett v. State*, 337 Ark. 374, 989 S.W.2d 910 (1999). Such a determination is a question of fact for the fact-finder to determine. *Sheridan v. State*, 313 Ark. 23, 852 S.W.2d 772 (1993). The credibility of witnesses is an issue for

the jury and not the court. *Phillips v. State*, 344 Ark. 453, 40 s.W.3d 778 (2001). The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.* We will disturb the jury's determination only if the evidence did not meet the required standards, thereby leaving the jury to speculation and conjecture in reaching its verdict. *Id.* When we review a challenge to the sufficiency of the evidence, we will affirm the conviction if there is substantial evidence to support it. *Id.*

Viewing the evidence in the light most favorable to the State, we turn to the question whether there was substantial evidence to sustain Atkinson's conviction of first-degree murder under Ark. Code Ann. § 5-10-102.[1] The threshold issue in making this determination is whether Atkinson was an accomplice to the murder of Smith.

■ We have outlined the elements required to support accomplice liability on numerous occasions. Under Ark. Code Ann. § 5-2-403 (Repl. 1997), an accomplice is defined as follows:

(a) A person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or facilitating the commission of an offense, he:

(1) Solicits, advises, encourages, or coerces the other person to commit it; or

(2) Aids, agrees to aid, or attempts to aid the other person in planning or committing it; or

(3) having a legal duty to prevent the commission of the offense, fails to make proper effort to do so.

---

[1] Ark. Code Ann. § 5-10-102 provides, in pertinent part:

(a) A person commits murder in the first degree if:

\* \* \*

(2) With a purpose of causing the death of another person, he causes the death of another person.

*Id.* Ark. Code Ann. § 5-2-202 (Repl. 1977) defines "purposely" as follows:

(1) "Purposely." A person acts purposely with respect to his conduct or as a result thereof when it is his conscious object to engage in conduct of that nature or to cause such a result.

*Id.*

(b) When causing a particular result is an element of an offense, a person is an accomplice in the commission of that offense if, acting with respect to that result with the kind of culpability sufficient for the commission of the offense he:

(1) Solicits, advises, encourages, or coerces the other person to engage in the conduct causing the result; or

(2) Aids, agrees to aid, or attempts to aid the other person in planning or engaging in the conduct causing the result; or

(3) Having a legal duty to prevent the conduct causing the result, fails to make proper effort to do so.

*Id.*

██ ██ One's status as an accomplice is ordinarily a mixed question of law and fact. *See, e.g., Britt v. State*, 334 Ark. 142, 974 S.W.2d 436 (1998) (citing *Williams v. State*, 329 Ark. 8, 946 S.W.2d 678 (1997). One's presence at the crime scene or failure to inform law enforcement officers of a crime does not make one an accomplice as a matter of law. *Id.* Relevant factors in determining the connection of an accomplice to a crime are the presence of the accused in proximity of a crime, the opportunity to commit the crime, and an association with a person involved in a manner suggestive of joint participation. *Id.* A defendant is an accomplice so long as the defendant renders the requisite aid or encouragement to the principal with regard to the offense at issue, irrespective of the fact that defendant was not present at the murder scene and did not directly commit the murder. *See Sumlin v. State*, 273 Ark. 185, 618 S.W.2d 372 (1981) (holding that it is irrelevant that Sumlin, who was in jail at the time of the murder, did not pull the trigger, if he aided, solicited, or encouraged his wife, Ruth Sumlin, in committing the murder).

██ In the present case, the evidence was more than sufficient for the jury to have found that Atkinson was an accomplice to the murder of Smith so as to sustain the jury's verdict convicting appellant of first-degree murder. Richard Lackie's testimony indicated that Atkinson asked him to kill Smith for her on numerous occasions. In addition, Lackie testified that he did kill Smith because Atkinson had asked him to do so. Further, Anthony Hughes's testimony indicated that Atkinson had told him that she had asked Richard Lackie to kill Smith for her. Moreover, while Atkinson testified that she was not serious about her request, she nevertheless

testified that she had discussed wanting Smith dead with both Lackie and Hughes. The abundant testimony indicating Atkinson's desire for Smith to be dead and her encouragement of Lackie to kill Smith for her is not only evidence of her purposeful intent to kill Smith, but is also evidence of her role as Lackie's accomplice, nothwithstanding the fact that she was not present at the shooting. *See Sumlin, supra.*

We further note that Ark. Code Ann. § 16-89-111(e) (Supp. 2001)[2] requires that the testimony of an accomplice be corroborated in order to convict a defendant of a felony. *See, e.g., Barnett v. State*, 346 Ark. 11, 53 S.W.3d 527 (2001). For purposes of § 16-89-111(e), corroborating evidence is sufficient if, without considering the accomplice's testimony, other evidence at trial independently establishes the offense and tends to connect the defendant with its commission. *Id.* The corroborating evidence does not have to be sufficient, standing alone, to sustain a conviction. *Id.* Moreover, corroboration can be provided by the acts, declarations, or testimony of the accused. *Id.*

In the present case, Atkinson's own statements acknowledging that she encouraged Lackie to kill Smith were sufficient to corroborate Lackie's testimony that she asked him to kill Smith. Moreover, Hughes testified that Atkinson had discussed killing Smith herself or asked Lackie to kill Smith for her. Based upon our standard of review of the sufficiency of the evidence, by which we defer to the jury as fact-finders regarding the credibility of the witnesses, we cannot say that the trial court erred in denying Atkinson's motion for directed verdict based upon the sufficiency of the evidence.

Atkinson next argues that the trial court erred by failing to give the jury her requested instruction on second-degree murder. Specifically, Atkinson argues that based on the testimony of Richard Lackie that he committed the murder at the last minute while he

---

[2] Section 16-89-111(e) provides:

(1)(A) A conviction or an adjudication of delinquency cannot be had in any case of felony upon the testimony of an accomplice, including in juvenile court, unless corroborated by other evidence tending to connect the defendant or the juvenile with the commission of the offense.

(B) The corroboration is not sufficient if it merely shows that the offense was committed and the circumstances therefor.

*Id.*

was under the influence of drugs, the trial court committed reversible error when it declined to give Atkinson's requested instruction on a lesser-included offense of second-degree murder. As authority for her argument, Atkinson relies on *Robinson v. State*, 269 Ark. 90, 598 S.W.2d 421 (1980), where we held it to be error for the trial court not to instruct the jury on second-degree murder where there was evidence that on the date of the homicides Mr. Robinson was probably "confused," in a "dreamlike state," and had "an unusual lack of appreciation" for what had happened — evidence upon which the jury could have relied in order to find an absence of premeditation and deliberation. We disagree with Atkinson's application of *Robinson* holding to the facts of this case.

■■ We have acknowledged that it is reversible error to refuse to give an instruction on a lesser-included offense when the instruction is supported by the slightest evidence. *Chapman v. State*, 343 Ark. 643, 38 S.W.3d 305 (2001). However, the trial court may refuse to offer a jury instruction on an included offense when there is no rational basis for a verdict acquitting the defendant of the charged offense and convicting him of the included offense. *Chapman, supra* (citing Ark. Code Ann. § 5-1-110(c) (Repl. 1977)). Moreover, it is not error for the trial court to decline to give the proffered instruction on the lesser offense when the evidence clearly shows that the defendant is either guilty of the greater offense charged or innocent. *Id.* In cases in which a defendant makes a claim of innocence, no rational basis exists to instruct the jury on a lesser-included offense because the jury need only determine whether the defendant is guilty of the crime charged. *Id.*

■ In the present case, no rational basis existed to instruct the jury on second-degree murder. First, as we discussed in our analysis of the sufficiency of the evidence, we note that Atkinson was an accomplice to a murder where Richard Lackie testified that Atkinson had asked him to kill Smith. This testimony was corroborated by Atkinson's own testimony. Second, even though Lackie testified that he decided to shoot Smith at the last second while he was under the influence of drugs, Lackie also testified that Atkinson had asked him to kill Smith on numerous occasions and that he would not have killed Smith but for Atkinson asking him to do so. Third, medical evidence showed that Lackie shot Smith in the back of the head from a distance of three feet or less, which is indicative of his purposeful intent to commit murder. Finally, in light of Atkinson's defense of innocence, no rational basis existed to instruct the jury

on a lesser-included offense, because the jury needed only to determine whether Atkinson was guilty or innocent of first-degree murder. Therefore, we cannot say that the trial court erred in declining to instruct the jury on second-degree murder, and we affirm the trial court on this point.

Finally, this court has reviewed the transcript of the record in this case in accordance with Ark. Sup. Ct. R. 4-3(h).[3] That rule requires, in cases in which there is a sentence to life imprisonment or death, that all prejudicial errors be reviewed in accordance with Ark. Code Ann. § 16-91-113(a) (1987). Pursuant to its obligation under Rule 4-3(h), the State examined the transcript and appellant Atkinson's abstract to ensure that all rulings adverse to her have been abstracted or supplementally abstracted for our review. The State certified that it briefed all issues raised by Atkinson on appeal and found one error on the part of the trial court involving the trial court's communication with the jury, which was neither abstracted nor briefed by Atkinson.

During the jury's deliberation in the guilt phase, the jury sent a note to the trial court containing two questions: "May we please see the letters written by Carmen to Richard in jail? Also statements to police by Carmen on October One and October Two." After a discussion between the trial court and counsel for the parties, the trial court stated the following: "I'm just going to say that the letters and statements, the written forms, are not in evidence. The spoken word is what they have to consider." When the court asked whether anyone objected to that answer, counsel for the prosecution responded, "no," and counsel for appellant responded, "It's a correct statement of the law."

The record lodged by Atkinson does not reflect whether, or in what manner, the trial court's answer was actually communicated to the jury. On September 6, 2001, however, we granted the State's motion to remand this case to the trial court for it to settle the record concerning whether, and in what manner, the trial court's

---

[3] Ark. Sup. Ct. R. 4-3(h) provides:

When the sentence is death or life imprisonment, the Court must review all errors prejudicial to the appellant in accordance with Ark. Code Ann. § 16-91-113(a). To make that review possible, the appellant must abstract all rulings adverse to him or her made by the trial court on all objections, motions, and requests made by either party, together with such parts of the record as are needed for an understanding of each adverse ruling. The Attorney General will make certain and certify that all of those objections have been abstracted and will brief all points argued by the appellant and any other points that appear to involve prejudicial error.

response to the jury's questions was communicated to the jury. In accordance with our writ of *certiorari*, the trial court held a hearing to settle the record on September 27, 2001, at which Atkinson and her counsel, as well as the prosecuting attorney and deputy prosecuting attorney, were present.

 Arkansas Code Annotated § 16-89-125(e) (1987) provides that trial courts must call juries into open court in order to communicate with them when they have a query during deliberations. Noncompliance with this statutory provision gives rise to a presumption of prejudice, and the State has the burden of overcoming that presumption. *Rhodes v. State*, 290 Ark. 60, 716 S.W.2d 758 (1986); *Clayton v. State*, 321 Ark. 602, 906 S.W.2d 290 (1995). The failure of a defendant and his counsel to be present when a substantial step, such as the judge's answering questions of law in the jury room is taken in defendant's case results in violation of the defendant's fundamental right to be present at any stage of the criminal proceeding is critical to the outcome. *Goff v. State*, 329 Ark. 513, 953 S.W.2d 38 (1997). However, this court has held that strict compliance with the rule was waived where attorneys went with the judge to the jury room, everything that happened was reported in the record, and there was no possibility of prejudice. *Martin v. State*, 254 Ark. 1065, 497 S.W.2d 268 (1973). In *Goff, supra*, on the other hand, this court held that strict compliance with § 16-89-125(e) had not been waived where the State failed to show what occurred during a trial judge's visit to the jury room.

 While the trial court here violated § 16-89-125(e) by communicating with the jury other than in open court, reversal of Atkinson's conviction here, in these particular limited circumstances, is not warranted, because the State clearly rebutted the presumption of prejudice which arose from the violation. The trial court found, without objection by Atkinson, that its communication with the jury was limited to answering the jury's questions via a note, using the language agreed upon by the parties. The record clearly reflects the substance of the trial court's communication with the jury, and the court answered the jury's questions in the manner agreed upon by the parties in open court. Here, the trial court never had any contact with the jury during deliberations, and Atkinson fully agreed with the court and State regarding the answer

written on the same note on which the jury had written its questions.[4] In short, the State clearly rebutted the presumption of prejudice which arose from any violation of § 16-89-125(e). To reverse this case on these facts would place form over substance and would in effect adopt a brightline rule which would require an automatic reversal merely by showing § 16-89-125(c) had been violated. That is not the rule. Here, the court's communication with the jury was shown not to be prejudicial to Atkinson, and Atkinson made no objection to the contrary. Thus, we affirm the trial court on all points.

BROWN and THORNTON, JJ., dissent.

IMBER, J., not participating.

RAY THORNTON, Justice, dissenting. In its analysis of the Rule 4-3(h) error that was brought to our attention by the State, the majority today has concluded that the State has overcome the presumption of prejudice that arose from the trial court's violation of Ark. Code Ann. § 16-89-125(e) (1987) when it communicated its answer to the jury's questions by means of a note without first bringing the jury into the courtroom. While I agree that the appellant's other points on appeal have no merit, I cannot agree with the majority's conclusion regarding the Rule 4-3(h) error. For this reason, I respectfully dissent.

The majority correctly acknowledges the well-established line of cases where we have held that strict compliance with Ark. Code Ann. § 16-89-125(e) may be waived where the attorneys go with the judge to the jury room, everything that happens is reported in the record, and, thus, there is no possibility of prejudice. See Bledsoe v. State, 344 Ark. 86, 39 S.W.3d 760 (2001) (citing Martin v. State, 254 Ark. 1065, 497 S.W.2d 268 (1973)). However, I am unable to agree with an extension of this exception to our strict compliance rule to the circumstances of this case.

Unlike the cases in which we have held that strict compliance had been waived where the attorneys go with the judge to the jury room and everything that happens is reported in the record, the trial judge and the attorneys here did not enter the jury room. In addition, while the trial court and the parties orally agreed to the language proposed for the note, and the discussion of such proposed

---

[4] Apparently, the note had been lost.

language was reflected in the record, the written note is not included in the record because it has since been lost. The exact language of the note is not part of the record. Instead, we are told what the trial court intended to convey by means of a note. Additionally, what occurred in the jury room when the trial court's response was received by the jury was not reflected in the record. *See Goff v. State*, 329 Ark. 513, 953 S.W.2d 38 (1997). There is nothing in the record to indicate the language actually used in the note because because no court reporter was present in the jury room to record the reading of the trial court's communication with the jury. In *Tarry v. State*, 289 Ark. 193, 710 S.W.2d 202 (1986), we held that the State had not met its burden of overcoming the presumption of prejudice by showing what occurred when the trial judge answered the jury's questions because the record was incomplete regarding the trial judge's actual communication with the jury. *Id*. As in the present case, the court reporter in *Tarry, supra*, did not record what happened when the trial judge entered the jury room to answer the jury's questions. *Id*.

Finally, the State's reliance upon *Houston v. State*, 41 Ark. App. 67, 848 S.W.2d 430 (1993) is misplaced. In that case, the court of appeals held that the presumption of prejudice had been rebutted where the record clearly reflected what occurred when the jury sent the note to the judge, as well as the judge's response, the note itself had been preserved for the record, and the trial court's communication with the jury occurred after the jury had already finished its deliberations on guilt. *Id*. Here, unlike in *Houston, supra*, the note has not been preserved as part of the record and the jury was still in the midst of deliberations in the guilt phase when the trial court sent its response to the jury's questions by means of a note.

I am unwilling to accept that the presumption of prejudice arising from a violation of the statute prohibiting a trial court's communication with the jury outside the confines of the courtroom may be cured by the trial court's effort to reconstruct the language that a missing note contained. The creation of such an exception to the rule established by statute will open the door to allow unrecorded communication with a jury that is in the midst of reaching a verdict. I cannot find that the State has rebutted the presumption of prejudice where the offending note is not available for our review. In my opinion, passing notes back and forth simply does not comply with the statutory requirement that all communication with a jury must be made of record in open court with all

parties present. I do not think we should extend the narrow exception to full compliance with the statute to fit the circumstances of this case.

In reaching my conclusion, I am mindful of the policy reasoning behind Ark. Code Ann. § 16-89-125(e), which we discussed in *Davlin v. State*, 313 Ark. 218, 853 S.W.2d 882 (1993). We stated:

> The following quotation, which stresses the importance of strict compliance with section 16-89-125(e)'s predecessor, bears repeating here:
>
>> The procedure set out in the statute is not difficult to follow and places no burden at all on the trial court or attorneys, and places very little burden on the jury. It simply recognizes that the courtroom, where the trial is being conducted, is the proper place for the giving of all instructions to the jury in open court and where all the jury and anyone else interested, including the defendant, can hear the instructions in the context given. The defendant, as well as the public, is entitled to know what goes on in the courtroom, but they are not entitled to know what goes on in the jury room. We can think of many good reasons why a jury should receive all instructions in the public forum of the courtroom and we can think of no good reason why it should not. To strictly follow the simple procedure as set out in the statute, would avoid such difficulties that have arisen in th[is] . . . case. . . .
>
> *Martin v. State*, 254 Ark. 1065, 497 S.W.2d 268 (1973) (referring to Ark. Stat. Ann. § 43-2139 (Repl. 1964), identical in all respects to section 16-89-125(e)).

*Davlin, supra.* Trial in open court is a fundamental right, and a contemporaneous objection is not required. *Goff v. State*, 329 Ark. 513, 953 S.W.2d 38 (1997).

Here, the trial court failed to follow the statute and erred in communicating with the jury by means of a note. The State failed to rebut the presumption of prejudice arising from that error because the note is not available for our review, and I would conclude that the trial court's violation of Ark. Code Ann. § 16-89-125(e) must be deemed prejudicial to appellant. I would reverse and remand the case to the trial court.

As Justice George Rose Smith wrote in *Tarry*:

> Although we have not held, and do not intend to hold, that this right of defendant cannot be waived, we take this means of giving notice that we will carefully scrutinize every case tried after the date of our decision in *Martin* (July 23, 1973) to determine whether there has been a waiver of defendant's right to have such proceedings held only in open court, and that *all reasonable doubts will be resolved by us against waiver.*

*Tarry, supra* (citing *Jackson v. State*, 256 Ark. 406, 507 S.W.2d 705 (1974); *Andrews v. State*, 251 Ark. 279, 472 S.W.2d 86 (1971)) (emphasis added).

Because I cannot agree with the majority's conclusion that the State has overcome the presumption of prejudice that arose from the trial court's violation of the statute prohibiting the trial court from communicating with the jury outside the presence of the courtroom, I respectfully dissent.

I am authorized to state that Justice BROWN joins in this dissent.