2012 Ark. App. 106

**Kenny Wayne CORNETT, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 11–672.**

Court of Appeals of Arkansas.

Feb. 1, 2012.

Rehearing Denied March 7, 2012.

Karen Pope Greenaway, Fayetteville, for appellant.

Dustin McDaniel, Atty. Gen., Valerie Glover Fortner, Little Rock, for appellee.

RAYMOND R. ABRAMSON, Judge.

Appellant Kenny Wayne Cornett was convicted by a Washington County jury of eight counts of terroristic threatening. He appeals these convictions, alleging that the trial court erred in (1) denying his motions for a mistrial or a continuance based on discovery violations and (2) failing to give an instruction on the defense of justification. We affirm.

On September 4, 2010, roughly thirty members of the Littrell family gathered for a barbeque to celebrate the Labor Day weekend. During the party, appellant Kenny Cornett drove by and observed that there were cars parked next to or on his grandfather's property and that they were blocking part of the driveway. Cornett told one of the children at the party that the vehicles needed to be moved.

Cornett returned approximately thirty minutes later. He had his girlfriend in the car with him at that time. Dean Littrell and two or three other members of the Littrell family walked into the road to talk with Cornett. Dean asked Cornett

what the problem was and Cornett told him to get his "f'ing vehicles off his property." Cornett stuck his arm out the window, and Dean slapped him in the face because he believed Cornett was trying to grab him. The mirror of Cornett's car was damaged during this altercation.

Cornett then left and drove to his grandfather's house where he called 911. Cornett informed the dispatcher that he had been struck twice through the window of his truck by one of the Littrells after he had asked them to move their cars. He stated that, if the police did not come out and make them move the vehicles, he was going to move them. He further stated that he was going to his house to get his gun and that "if they go and take another swing at my head I'm gonna blow their f**kin' heads off." He informed the dispatcher that four of the Littrells had approached him and that "if they take a swing at me again, or come on my property, I'm gonna drop 'em where they stand." He told the dispatcher that he was on his cell phone at his grandfather's, but that he was going to his parents' house to get his gun and return to the property. When the dispatcher advised him not to do so, Cornett stated, "If they're on my land and they threaten, I'm gonna blow their f**kin' heads off. I've already been hit twice in my car. I wanna defend myself." When the dispatcher again advised him not to take a gun to the property, Cornett stated, "He's gonna see bodies out there on my land [long pause] I think I have a right to defend my land and myself. Don't I?" The dispatcher confirmed that Cornett had the right to protect himself, but that he did not want Cornett to get injured. Cornett responded, "Oh I'm not the one that's gonna get hurt. I'm gonna be the one with the 7–mag poppin shells. It won't be me the one gettin' hurt whatsoever. [long pause] I'm at my grandpa's down at the highway. I'm going to mom

and dads to get my gun. . . . I'll meet ya'll down at that house and if they step on my land. . . . If you can be here in about the next 6 minutes, I can wait here at the highway before I go up there. If it's gonna be longer than that, I'm gonna solve this myself. . . . If you ain't out here soon, I'm tellin' ya, I'll drop 'em where they stand. . . . He better hurry if he wants them around. . . . It's Dean Littrell, Deon Littrell, that whole bunch. Four of them on me. Like I said, I'm goin' to the house and gettin' my 7–mag and if they're still there, and they step on my property, I'm droppin' 'em. I've already been hit, so I'm defendin' myself. That's all there is to it. . . . He better hurry for their sake."

After completing the 911 call, Cornett went to his parents' house to drop off his girlfriend. He also retrieved a gun, purportedly for his own protection. He then went back and parked his car in the driveway of his grandfather's property. By that time, the Littrells had already moved their cars. Cornett got out of his vehicle and held his gun in the air. Several of the Littrell party were crossing the road to speak with Cornett when he showed them the weapon. It was disputed whether the Littrells were being menacing and whether Cornett was waving the gun around or pointing it at the Littrell party.

During this time, Donnie Littrell called 911. Donnie told officers that Cornett had showed up at their family get together and had pulled a gun out on them. He told officers that Cornett was standing there with a pistol in his hand. After the 911 operator told them to go in the house, Donnie told everyone to "get back over here." He stated that they had not gone inside, but they were still on the property. He said he was trying to calm everyone down but that Cornett was still standing there with his gun in his hand.

When the police arrived, Cornett was placed under arrest. He was subsequently charged with eight counts of aggravated assault and eight counts of terroristic threatening for his actions that day.

Prior to trial, defense counsel made several discovery requests. The State provided counsel with a transcript of Cornett's 911 call prior to trial, but did not provide a copy of the recording itself. Counsel objected to the admission of the recording at trial, and the trial court granted a recess so that defense counsel would have an opportunity to check the accuracy of the transcript with the recording. After reviewing the transcript and tape, defense counsel withdrew his objection.

However, defense counsel moved for a mistrial because a copy of the 911 call by Donnie Littrell was also present on the recording and had not been provided to defense counsel prior to trial. Defense counsel argued that the tape contained potentially exculpatory evidence because Donnie Littrell never stated that Cornett had pointed the gun at anyone and that there was a female voice on the tape telling someone to "leave him alone." He argued that, if he had been provided that tape, he would have been able to cross-examine several of the State's witnesses regarding the information in the second 911 call and that he would have done further investigation which might have led to exculpatory evidence. The trial court denied the motion for a mistrial, finding that there was no evidence that the State intentionally withheld the information. The defense then requested a continuance to conduct further investigation into the persons heard speaking on the recording, as well as to investigate when the prosecution became aware of the recording. Once again, the trial court denied the motion, finding that Cornett was not prejudiced by its untimely disclosure.

Defense counsel thereafter introduced the 911 tape into evidence in his case in chief. During closing arguments, counsel emphasized to the jury that Donnie Littrell had not told the officer during the 911 call that Cornett had waved the gun around or that he had pointed it at anyone. He also emphasized that the female voice on the tape was instructing someone to leave Cornett alone, thereby implying that the Littrells, not Cornett, was the aggressor.

At the close of the case, Cornett requested that the jury be instructed on justification as a defense. Counsel proffered AMI Crim.2d 705. The trial court refused to give instruction 705, but did state that it would give a more appropriate justification instruction. However, the court only gave the justification instruction on the aggravated-assault counts, not the terroristic-threatening counts. Defense counsel did not object to the trial court's omission until after the jury had deliberated and reached a verdict.

Cornett was ultimately acquitted by the jury of the eight aggravated-assault counts, but was convicted on eight counts of terroristic threatening. He was sentenced to a total of two years in the Arkansas Department of Correction. He now appeals.

## I. *Discovery Violation*

Cornett first argues that the State committed a discovery violation by failing to disclose the second 911 call and that the trial court erred in failing to grant his motion for mistrial, or in the alternative, his motion for continuance as a sanction for this violation.

The standard of review for imposing sanctions for discovery violations is whether there has been an abuse of discretion. *Barrow v. State*, 2010 Ark. App. 589,

377 S.W.3d 481. It is within the circuit court's discretion which sanction, if any, to employ. *Id.* A mistrial is an extreme sanction for a discovery violation and is to be avoided unless the fundamental fairness of the trial itself is at stake. *Id.* The circuit court's denial of a defendant's motion for continuance will not be reversed in the absence of a showing of such a clear abuse of the court's discretion as to amount to a denial of justice, and the burden rests upon appellant to show such an abuse. *Id.* Furthermore, a reversible discovery violation will occur only if a defendant is prejudiced by the prosecutor's failure to disclose. *E.g., Robinson v. State,* 317 Ark. 512, 879 S.W.2d 419 (1994). In order to show prejudice, an appellant must demonstrate a reasonable probability that the result would have been different had the information been disclosed. *E.g., Lee v. State,* 340 Ark. 504, 11 S.W.3d 553 (2000). Under these standards, appellant has the burden to show that the omission was sufficient to undermine the confidence in the outcome of the trial. *Id.*

Cornett argues that, if the second 911 call had been provided to him before trial, it could have resulted in potential cross-examination material or, more importantly, exculpatory information—both of which are discoverable and basic to his right to a fair trial. Appellant argues that, pursuant to Rule 17.1 (2011) of the Arkansas Rules of Criminal Procedure, the State was obligated to make such disclosure and that, even if the prosecutor was unaware that the second 911 call existed, the knowledge of the sheriff's office which recorded the telephone call should have been imputed to the State.

Cornett urges that the circuit court, at a minimum, should have granted a continuance to allow him the opportunity to question witnesses and determine whether the State's failure to disclose was intentional. Thus, appellant maintains that the court clearly abused its discretion by not granting a continuance.

 Here, it is clear that a discovery violation occurred. Cornett requested this information in discovery and the State failed to produce it. The fact that the prosecutor may have been unaware of its existence is irrelevant as the knowledge of the sheriff's department is imputed to him.[1] *Lacy v. State,* 272 Ark. 333, 614 S.W.2d 235 (1981).

 The inquiry does not end there, however. In order for the failure to disclose to constitute reversible error, Cornett still had to prove that he was prejudiced by the State's failure to disclose the material. He has not done so.

First, Donnie Littrell was identified as one of the victims of Cornett's alleged crimes in the charging document. Thus, his existence was not unknown and his status as an eyewitness to the events in question could not have been a surprise to the defense. Second, Donnie Littrell was present in the courtroom on the day of the trial, and defense counsel could have requested a recess to question Donnie more fully about the 911 tape or could have called him to the stand. He did not do so. Third, even if Donnie Littrell had testified that Cornett was not waving the gun around, several other witnesses testified to the contrary, and credibility determinations are left to the jury. Fourth, defense counsel played the second 911 tape to the

---

1. Cornett claims that a continuance was necessary to allow him to investigate whether the prosecutor knew of the existence of the second 911 tape and acted in bad faith. However, because we hold that, in these circumstances, the knowledge of the sheriff's office was imputed to the State and that a discovery violation occurred, an investigation into the knowledge of the prosecutor would have been irrelevant.

jury and was able to point out that Donnie did not mention to the officer that Cornett was waving the gun around or pointing it at anyone. Thus, he was not prevented from making his argument to the jury. Finally, even if the background witnesses had been called to testify that Cornett was not the aggressor in this incident, no justification instruction was given on the terroristic threatening counts; thus, such evidence was irrelevant to the crimes for which he was ultimately convicted.

As Cornett has failed to prove that he was prejudiced by the discovery violation, we affirm on this point.

## II. *Jury Instruction*

Next, Cornett argues that the trial court abused its discretion by failing to give the jury a justification instruction with respect to the terroristic-threatening counts. However, Cornett failed to establish a record below that would allow him to appeal this issue. It is well-settled law that no party may assign as error the failure to give a jury instruction unless he objects thereto before or at the time the instruction is given, stating distinctly the manner to which he objects and the grounds of his objection. *Bridges v. State*, 327 Ark. 392, 938 S.W.2d 561 (1997).

Here, Cornett requested the trial court give the standard AMI Crim.2d 705 instruction as to justification. The trial court denied the request stating that that particular instruction did not apply under the circumstances of this case, but agreed to give a justification instruction. However, when the jury instructions were read to the jury, the trial court gave only the justification instruction on the aggravated-assault counts. No justification instruction was read or given to the jury on the terroristic-threatening charges. Defense counsel did not object at the time the instructions were read to the jury. Rath-er, defense counsel objected only after the jury had completed deliberations. In order to be timely, objections to jury instructions must be made either before or at the time the instruction is given, and the failure to do so constitutes a waiver of that argument on appeal. *Halliday v. State*, 2011 Ark. App. 544, 386 S.W.3d 51. Defense counsel argues that he was not given enough time to review the instructions and that he relied on the trial court's reassurances that a justification instruction would be given. However, even if counsel had not been given time to review all the written instructions, counsel was present when the court orally advised the jury and failed to object at that time. Because there was no timely objection, the argument is not preserved for appeal.

Affirmed.

VAUGHT, C.J., and HOOFMAN, J., agree.