# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR–13–521

| | |
|---|---|
| | **Opinion Delivered** February 19, 2014 |
| CHRISTOPHER LAMAR ROGERS<br>APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SEVENTH DIVISION |
| V. | [NO. 60CR–12–516] |
| | HONORABLE BARRY SIMS, JUDGE |
| STATE OF ARKANSAS<br>APPELLEE | AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Christopher Lamar Rogers was convicted by a Pulaski County Circuit Court jury of the first-degree murder and robbery of Greg Smith. As a habitual offender, appellant was sentenced to serve forty years in prison. He appeals, arguing that the trial court abused its discretion in permitting a State's witness, Darrell Temple, to testify over his objection because the witness was not listed on the State's final witness list prior to trial. Appellant contends that this constituted reversible error. We disagree and affirm appellant's convictions.

Appellant does not challenge the sufficiency of the evidence to support his convictions and therefore, we will limit the recitation of the facts necessary to address the issue on appeal. This was, by all accounts, a "drug deal gone bad." These crimes took place near midnight on December 29, 2011, in a parking lot of an apartment complex on Geyer Springs Road in Little Rock, Arkansas.

SLIP OPINION

The appellant, Christopher Rogers, (a/k/a "Young Money" and "Toppie") was admittedly a drug dealer having sold "weed" and "crack." Appellant had prior convictions for selling marijuana in 2010 and 2011. In this particular drug deal, appellant was to purchase two pounds of marijuana from Greg Smith. Appellant's cousin, Stevie Rogers, knew Darrell Temple, who in turn knew Greg Smith, a known marijuana dealer. The drug deal was supposed to happen in the apartment complex's parking lot.

On that night, Greg Smith was in Darrell Temple's apartment. Around 11:00 p.m., appellant and three friends—Rashun Goins, Mark Goolsby (a/k/a "Muff"), and Eric Austin (a/k/a "Mon")—went to the apartment complex in a gray Dodge Charger. "Mon" backed the Charger into a parking space adjacent to Greg's vehicle, a Chevy Cobalt. Appellant was in the front passenger seat, nearest to the Cobalt's driver's side.

Around midnight, Greg—who was armed with a handgun—exited Darrell's apartment and walked toward his car, the Cobalt. A confrontation occurred and multiple shots were fired. Greg was shot more than once, and "Muff" was shot in the hand. Greg fled on foot, back to Darrell's apartment. Appellant and his group left the scene in the "shot up" and "blood stained" gray Charger.

An apartment resident testified that he was awakened by the first two shots, and when he looked out his window, he saw people fleeing in a gray Dodge Charger and one man running down a breezeway toward an apartment in the complex. This witness called the police and reported that the Charger probably had bullet holes in it. He said that he knew

Greg Smith to carry a nine millimeter gun, and that he thought it was Greg running back to the apartment.

Two officers responded to the call and were directed to Darrell's apartment, where they found a severely wounded Greg on the floor. The officers also noticed a semi-automatic handgun on the floor. Greg was transported by ambulance to UAMS.

On the parking lot, police enclosed the area around Greg's Cobalt with crime-scene tape. Blood found in the immediate area of the crime was later identified by DNA testing as belonging to "Muff," apparently as a result of the gunshot wound to his hand. A separate blood trail ran from Greg's car to the apartment where he was found. Both .40 and .45 caliber shell casings and fragments were found at and around the crime scene, and the State was able to determine that three weapons were fired that night. Eight rounds were fired from Greg's .45 caliber Taurus handgun. Greg was shot with a .40 caliber weapon, and there were other shell casings ejected by a different gun that fired .45 caliber ammunition.

Later that same night, Pine Bluff police located a bullet-ridden and bloodied gray Dodge Charger in Pine Bluff. The authorities in Pine Bluff were about to tow the vehicle when Rashun appeared, claiming that he had been driving it. The car was towed, although the Pine Bluff police were unaware at that time of the shootings that had happened at the Little Rock apartment complex.

The next day, the Pine Bluff police were advised by Little Rock police to be on the lookout for a gray Dodge Charger that might contain bullet holes and blood. The law

enforcement agencies made contact. A letter addressed to appellant was found inside the Charger, which belonged to Ebony Lewis, the mother of one of appellant's children.

Rashun was subsequently arrested and charged with murder and robbery, but he entered into a plea deal with the State. He admitted to being with the other three men in the Charger that night at the apartment complex. Rashun stated that the others were armed with guns and intended to rob the person who came out of the apartment. He identified appellant as one of the shooters, although he did not know who started shooting first.

The subsequent investigation led the police to appellant's cellular telephone records. The cell phone records revealed that appellant had been in Little Rock on the night of the shooting. These incriminating text messages were sent from appellant's cell phone shortly before, and in the hours and days immediately after, these crimes:

> *Wats da name of da apts*
> *[s]ome shot da car up we had to go*
> *Had a shoot out sum BS happened*
> *car got shot up one nig★★ got killed Muff got shot in da hand*
> *Nope sum nig★★ from da rock*
> *I done got in sum shi★*
> *If anybody ask u have I told u anything say naw*

Darrell was called to testify at the trial. The defense counsel objected on the basis that he was not on the State's final witness list, although his name and statement were in the State's open file provided during discovery. The prosecutor responded that his omission from the final witness list was "merely a mistake," that his identity and statement had been in the prosecutor's open file "the whole time," and that defense counsel could not be surprised by Darrell being called to testify. The trial court permitted Darrell to testify.

SLIP OPINION

Darrell testified that Greg, who he knew was a marijuana dealer, was at his apartment on the night of the shooting. Darrell said that Stevie (a/k/a "Pimp") called him to set up a marijuana buy with Greg. He said that after about an hour went by, he watched Greg walk out of the apartment, and then he closed and locked his apartment door. Shortly thereafter, Darrell heard "a bunch" of gunshots and went to the door. As soon as he reached the door, he heard Greg beating it, wanting to be let back inside. After he let Greg back in, Darrell saw that Greg was injured, in pain, and scared that he was going to die; he also saw Greg's emptied handgun on the floor. Darrell called 911 and tried to administer first aid. Greg subsequently died during surgery at UAMS.

Appellant, testifying in his own defense, did not dispute that he was present on the night of the shooting or that he intended to buy drugs from Greg. Appellant denied knowing that a shootout was going to happen, denied shooting at all, and denied going to the complex with the intent to rob or kill Greg.

On this evidence, the jury rendered guilty verdicts against appellant. He appeals, arguing that the trial court abused its discretion in permitting Darrell to testify despite failure to disclose him on the State's final witness list provided by email the week prior to trial. We disagree that appellant has demonstrated an abuse of discretion resulting in reversible error.

Arkansas Rule of Criminal Procedure 17.1(a)(i) (2013) imposes a duty on the State to disclose the names and addresses of persons that it intends to call as witnesses at trial. If the State relies on its "open file" policy to fulfill its discovery obligations, it must make every practicable effort to ensure that the information and records contained in the file are complete

and that the documents employed at trial are identical to the material available to the defense in the open file. *Smith v. State*, 352 Ark. 92, 98 S.W.3d 433 (2003). In order to reverse on appeal, an appellant must make a showing of prejudice in the trial court's ruling on the discovery violation. *Id.* If there is a discovery violation, the choice of an appropriate sanction is within the trial court's discretion. *Id. See also* Ark. R. Crim. P. 19.7(a) (2013) (permissible sanctions for discovery violations). On appeal, the key in determining whether a reversible discovery violation exists is whether the appellant was prejudiced by the prosecutor's failure to disclose. *Bray v. State*, 322 Ark. 178, 908 S.W.2d 88 (1995). This means that the appellant must demonstrate a reasonable probability that the result would have been different had the information been disclosed. *Cornett v. State*, 2012 Ark. App. 106, 389 S.W.3d 47. These standards require a showing that the omission was sufficient to undermine confidence in the outcome of the trial. *Id.*

As applied to this appeal, the State fulfilled its discovery obligation by its open file policy in the months preceding trial. To the extent that the State failed to specifically list Darrell as its intended witness in the week prior to trial, appellant fails to demonstrate that he was prejudiced nor can he show that the omission affected the outcome of this trial. Defense counsel did not contend that the defense was unaware of the existence of this person, nor did defense counsel request a continuance or for time in which to interview this witness.

Moreover, Darrell's testimony did not touch on appellant's guilt or innocence and was instead less than complimentary to his deceased friend Greg. He testified that Greg was a drug dealer known to carry a handgun, indicating that Greg emptied his own handgun in this drug



deal that went awry. Indeed, defense counsel argued in closing to the jury that Darrell was one of the "neutral witnesses" whose story made sense. We hold that appellant fails to carry his burden to demonstrate prejudice in the State's omission of Darrell's name from its witness list. *Compare Chunestudy v. State*, 2012 Ark. 222, 408 S.W3d 55.

We affirm appellant's convictions.

GLADWIN, C.J., and VAUGHT, J., agree.

*Gina H. Reynolds*, Deputy Public Defender, by: *Clint Miller*, Deputy Public Defender, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Laura Shue*, Ass't Att'y Gen., for appellee.